# DECISIONS

OF THE

# COURT OF APPEALS OF KENTUCKY

## JANUARY TERM, 1912

## Madisonville, Hartford & Eastern Railroad Co., and Walton, Wilson, Rodes Co. v. N. D. Owen, and Williams, Koehler & Barrier.

(Decided February 16, 1912.)

### Appeal from Muhlenberg Circuit Court.

1. Continuance—Motion for—Agreement of Witnesses to be Present.
—An affidavit that sets out that the defendant did not obtain subpoenas for certain witness because the witnesses had agreed to be present at the trial, is insufficient. Their depositions should have been taken, or subpoenas, or other proper process had to compel their attendance.

2. Equity—Motion to Transfer to Equity.—A motion to transfer to equity was properly overruled where the issues were merely those of whether there had been negligence, and whether the plaintiff had suffered loss, and if he had, the amount of his damage.

3. Instructions—Servant of Railroad Company.—The appellant railroad company let a construction contract to Walton, Wilson Rodes Company, and the latter company sublet a part of it to Williams, Koehler & Barrier. In an action by Owen against the railroad company for damages resulting to him in floating logs, from the obstruction of a stream, and making the Walton, Wilson, Rodes Company a defendant by an amended petition, the court correctly told the jury in interpreting the contract that the latter was the servant of the railroad company, and that for such damages as were sustained the plaintiff might recover against it and the railroad company.

BROWDER & BROWDER, BENJAMIN D. WARFIELD, and CHARLES H. MOORMAN for M. H. & E. R. R. Co.

WILLIS & MEREDITH, W. J. ROSS for Owen.

HEAVRIN & WOODWARD for Walton, Wilson & Rodes Company.

TAYLOR & EAVES for Williams, Koehler & Barrier.

Opinion of the Court by Judge Winn—Affirming.

On June 19th, 1906, the appellant railroad company let to its co-appellant, the Walton, Wilson, Rodes Company, by written contract, the construction of some fifty-five and one-half miles of its railroad from Providence, Kentucky, to Mitchell, Kentucky. On July 10th, of the same year, the Walton, Wilson, Rodes Company sublet to the appellees, Williams, Koehler & Barrier, by written contract of practically the same substance, a part of the construction of this fifty-five and one-half miles of road. The part let to Williams, Koehler & Barrier included the bridge across Pond River, out of which this litigation arose.

On May 25, 1909, appellee N. D. Owen sued the railroad company in the Muhlenberg Circuit Court. His petition charged the operation of the railroad; that a part of its railroad was a bridge across Pond River, a navigable stream on the line between Muhlenberg and Hopkins Counties; that prior to February, 1909, it caused piles to be driven between the piers of the bridge, accumulating a drift and obstructing navigation; that in February he came down Pond River with a raft of three thousand logs and could not get through the drift; that he incurred expenses of $75 in amount in clearing out the drift; that he had to cut up his raft to get the logs through and lost $975 worth of logs.

The railroad company answered, traversing the allegations of his petition and alleging that the work was done by the Walton, Wilson, Rodes Company as an independent contractor, and that that company, therefore, alone was liable for Owen's damage.

In February, 1910, Owen filed an amended petition making the Walton, Wilson, Rodes Company a defendant. He alleged that the latter company was employed by the railroad company to perform the work, under its supervision; that the obstructions above named were the result of their joint negligence; and prayed judgment against both the Walton, Wilson, Rodes Company and the railroad company.

On June 5, 1910, the Walton, Wilson, Rodes Company filed its answer and cross petition in thirteen paragraphs, pleading, among other things, that the work was done under the supervision of the railroad; that the railroad had the right to annul the contract, and had done so on March 31, 1908, and had finally inspected and re-

ceived the work.  The thirteenth paragraph was a cross petition against the appellees, Williams, Koehler & Barrier, charging in substance that the latter firm did the bridge work as independent contractors, and that they alone were liable for Owen's damage.  On September 5, 1910, the railroad company filed its answer to the answer and cross petition of the Walton, Wilson, Rodes Company.  On September 7, 1910, Williams, Koehler & Barrier filed their answer, denying the allegations of the plaintiff's petition, though he had sought no recovery against them.  They further plead that the cause of action in the plaintiff had accrued more than twelve months prior to the institution of the action and was barred.  They adopted as their answer a number of the paragraphs of the answer of the Walton, Wilson, Rodes Company; and then answering the cross petition of that company, set up that they were the agents of said company; denying that they, Williams, Koehler & Barrier, were independent contractors; or did the work as independent contractors.  They further alleged that their contract with the Walton, Wilson, Rodes Company was by its terms, subject to cancellation; and that same had been cancelled on the 31st day of March, 1908.  The other paragraphs of their pleading need not be set out, save the twelfth paragraph.  In that paragraph they allege that the bridge work was actually done by one Talbert, as an independent contractor, under a contract with them to build the bridge.  Talbert, however, was not made a party to the action.  By agreed orders all affirmative matter in all these pleadings was controverted of record, and the case came on for trial at the January, 1911, term of the court. The railroad company moved the court to continue the case at this term, and filed in support of its motion the affidavit of J. C. Browder, one of its attorneys.  The motion was overruled and the railroad company complains of the refusal to continue.  This affidavit sets out that the railroad company did not obtain subpoenas for the witnesses upon whose absence a right to a continuance was predicated, because it expected to have said witnesses present in person and that they had agreed to be present.  The case had been continued at the prior September term of court.  The railroad company, therefore, should have taken their depositions, or should have had subpoenas or other proper process to compel their attendance. Failing a showing of such steps, it showed no valid basis

for the continuance and the trial court rightly overruled the motion therefor.

It is also complained by the railroad company that its motion to transfer to equity was overruled. While it is true that the sundry contracts above set out did involve peculiar questions of legal liability as between the various constructing parties, that question was one of easy ascertainment by the court and involved no trial of a complicated or peculiar issue by the jury. Nor was there any such great detail of fact as to render it impracticable for the jury to intelligently try the issues submitted to them. The issues which went to the jury were merely those of whether there had been negligence, whether the plaintiff had suffered loss, and if he had, the amount of his damage. There was, therefore, no error in the action of the court in overruling the motion to transfer to equity. The respective rights of the three companies involved, depending upon a proper judicial construction of the written contracts filed evidencing the contractual rights as between them, were ascertained by the court. It would not have been otherwise had the action been in equity.

Upon the trial the court instructed the jury to find for Williams, Koehler & Barrier, and a judgment accordingly was rendered dismissing the case as to them; the court, however, expressly directed that the peremptory verdict in favor of Williams, Koehler & Barrier should not prejudice the right of the Walton, Wilson, Rodes Company to maintain action for indemnity against Williams, Koehler & Barrier should the result of the trial so eventuate against the Walton, Wilson, Rodes Company as that it might seek to make itself whole by recovery from Williams, Koehler & Barrier.

Upon the trial such evidence was introduced before the jury as to warrant their verdict that the plaintiff had suffered damages in the sum of $1,050, the amount of the verdict rendered in his favor. This verdict was returned against the railroad company alone.

This brings us to the principal complaint in the record. Instruction No. 1 given by the court told the jury that the Walton, Wilson, Rodes Company, Williams, Koehler & Barrier and Talbert were the servants of the Madisonville, Hartford & Eastern Railroad Company, and that for such damages as the plaintiff might have sustained he might recover against the railroad company and the Walton, Wilson, Rodes Company. By a sepa-

rate instruction the jury were told that they might find against both or either of these companies. The railroad company complains insistently that the Walton, Wilson, Rodes Company was an independent contractor, and under the contract between the two companies was so independent of the railroad and its supervision as that it alone was liable and responsible to the plaintiff for his damages. This question, therefore, turns upon whether the court erred in denying the application of the doctrine of independent contractor, under the facts shown in the record. The decisions of this court are clear in defining when the relation exists and when it does not exist. A very excellent statement of the doctrine is found in Mason & Hoge Company v. Highland, 116 S. W., 320, where this court said, in presenting a satisfactory test:

"Who has the general control of the work? Who has the right to direct what shall be done, who shall do it, and how it shall be done? If the answer to these queries shows that this right remains in the employer, the relation of independent contractor does not exist between the contractor and the employer. On the other hand, if the employer has not this privilege, it does exist."

The writer further remarks that a general right in the employer to see that the work is done according to plans and specifications as set out in the contract does not militate against the idea of an independent contractor; and in substance that if this right were the only supervisory right, the relation of an independent contractor would exist. In the opinion there is quoted the definition taken of an "independent contractor" from 26 Cyc., page 970, as "one who contracts to do a specific piece of work, furnishing his own assistants, and executing the work either entirely with his own ideas or in accordance with a plan previously given to him by the person for whom the work is done, without being subject to the orders of the latter in respect to the details of the work."

Again, in Ballard & Ballard Company v. Lee's Admr., 131 Ky., 412, this court, using the same language as is quoted from Cyc., supra, remarks that the person so engaged will be regarded as an independent contractor. But the opinion adds:

"If the owner or person having the work done not only directs what shall be done but how it shall be done, and controls the laborers employed upon it, or, if the

person engaged to do the work 'is at all times subject to the will of his employer, or can not properly refuse to obey his directions as to the mode in which the work shall be done and the persons to be employed' the relation of master and servant, and not that of an independent contractor, exists, although the employer should never exercise such control and the employe should be paid by the job instead of by the day or week.''

In the case of Pine Mountain Railroad Company, et al. v. Finley, 117 S. W., 413, this court said:

''Ordinarily, where one employs another to execute a piece of work, and the one so employed has the right to select his own assistants or help, the employer having no control over the hands of the employe, and no right to direct the manner in which the work shall be done further than to require that it shall be done in compliance with the specifications under which it is contracted to be done, the one so contracted with is an 'independent contractor.' The relationship of 'master and servant' does not exist between the contractor and the contractee, and the employer is not liable for any injury which may be sustained by third persons from the negligent manner in which the work may be done by the employes of such 'independent contractor,' provided the said 'independent contractor' is a person of sufficient skill, ability, and experience to justify the belief that he can properly carry out his undertaking.''

To this, however, the opinion remarks that there are certain well recognized exceptions, among which is the one that, if the owner or employer personally interferes with, undertakes to do, manage or control the work of the independent contractor, he thereby destroys the relationship of independent contractor.

In John's Admr. v. McKnight & Company, 117 Ky., 655, this court adopts the definition given by Thompson on Negligence of an independent contractor, as one ''who renders service in the course of an occupation representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished.''

In L. & N. R. Company v. Smith's Admr., 134 Ky., 47, this court held that a contractor, doing work under the L. & N. road, was an independent contractor, because ''the railroad company had no control or authority over him in the conduct of said work, further than to see that

it was done according to specifications which it had furnished him.''

These definitions are so clear and draw so sharply the line as that there can be but little difficulty in determining from the facts of any given case whether the one who does the work is, in law, an independent contractor, or is but a servant executing the will of the master. It remains, therefore, to investigate the written contract in the record between the railroad company and the Walton, Wilson, Rodes Company in an effort to arrive at a determination of the presence of an independent contractual element in the case at bar. We find this specific provision in the contract:

''It is distinctly understood and agreed between the parties that the work under this contract shall, at every stage of its progress, from beginning to end, be subject to the direction, inspection and acceptance of the engineer.''

There is not much room for argument with this provision before us. The railroad company, through its engineer, reserved to itself the right to direct the work at every stage of its progress. The relation of independent contractor, under the definitions given above, therefore, did not exist. It follows that the trial court properly interpreted the contract in telling the jury that the Walton, Wilson, Rodes Company was the servant of the railroad company. The railroad company argues that this provision reserved to the railroad company no more than the right to pass on the finished work; but its argument is not sound nor in accord with the very terms of its contract. It follows, therefore, that the railroad company was liable to the plaintiff for his damages; nor can the railroad complain in this action that the jury failed to return a verdict against the Walton, Wilson, Rodes Company. Illinois Central Ry. Co. v. Murphy's Admr., 123 Ky., 787.

The appeal upon the part of the Walton, Wilson, Rodes Company is based upon a supposed error of the trial court in directing the verdict in favor of Williams, Koehler & Barrier. The Walton, Wilson, Rodes Company, however, has suffered nothing in this case. There is a verdict of the jury in its favor. It, therefore, has nothing of which to complain.

The contract, given in evidence, between the railroad company and the Walton, Wilson, Rodes Company, and between the latter company and Williams, Koehler &

Barrier, have various provisions as to indemnity against damage, the termination of the work, inspection and acceptance of the work, and the like; but we are not concerned with these provisions now. Under the interpretation put by the court, and correctly, as we have indicated, upon the relation existing between the sundry parties to these contracts, the trial had was simply a trial of the right of the plaintiff, Owen, to recover for his damages. If the railroad company claims any right against the Walton, Wilson, Rodes Company, or if the latter company should ultimately claim any right against Williams, Koehler & Barrier, those rights are open to, litigation and are not concluded by the judgment below.

The judgment is affirmed.