JOHN NORTON, Appellee, v. DAY COAL COMPANY, Appellant.

**MASTER AND SERVANT:** Workmen's Compensation Act—Findings
1    by Commissioner. A finding by the industrial commissioner that a
claimant for compensation was a *contractor,* and not an *employee,*
is a finality, when the record reveals sufficient, competent, and
supporting evidence for such finding.

**MASTER AND SERVANT:** Workmen's Compensation Act—Contractor
2 (?) or Employee (?)   A contract for services creates the rela-
tion of *contractor* and employer, and not the relation of *employee*
and employer, when, in its *essential* features, the employer retains
no control over the methods and details of the work, but only over
the results.   Retention of *some* control over the workman does not
necessarily render the latter an "employee."   So held where the
workman, delivering coal for a dealer at a stated sum per ton, used
his own team and wagon, and loaded, delivered, and obtained a
receipt where the dealer directed, but otherwise was not subject
to the control of the dealer.

WEAVER, C. J., dissents.

Note that five judges neither concur in nor dissent to Syllabus
No. 2.

*Appeal from Woodbury District Court.*—GEORGE JEPSON, Judge.

DECEMBER 31, 1920.

REHEARING DENIED OCTOBER 1, 1921.

OVERRULING the finding of the industrial commissioner, the
trial court held that appellee was entitled to compensation under
the act, because an employee of defendant. Defendant appeals.
—*Reversed.*

*Sears, Snyder & Gleysteen,* for appellant.

*T. P. Cleary,* for appellee.

SALINGER, J.—I. . The statute not only fails to create a
liability in favor of contractors, but declares that no contractor
engaging to give services is an "employee."   And the terms
"contractor" or "independent contractor" do,

1. MASTER AND
SERVANT:
Workmen's
Compensation
Act: findings
by commission-
er.

despite liberal interpretation of the act, retain
their common-law meaning, and are still to be
given the meaning that courts have always
given them. *Storm v. Thompson,* 185 Iowa 309;
*Pace v. Appanoose County,* 184 Iowa 498; Code Supplement,
1913, Section 2477-m16.

.II.   The commissioner found against liability, on the ground
that claimant was a contractor.

2. MASTER AND
SERVANT:
Workmen's
Compensation
Act: con-
tractor (?) or
employee (?)
How far can court review, in the district court or here, of such findings, go?

Speaking through Mr. Justice Weaver, we said, in *Fischer v. Priebe & Co.*, 178 Iowa 512:

"It was not within the authority of the court to review or reverse or modify the award. Its function in the matter was simply to receive the award certified to it, and 'render a decree in accordance therewith and notify the parties.'"

We need not go so far as this, and in *Griffith v. Cole Bros.*, 183 Iowa 415, at 418, and in *Pierce v. Bekins V. & S. Co.*, 185 Iowa 1346, we declined to do so. We held, in *Pace v. Appanoose County*, 184 Iowa 498, that:

"Courts may not interfere with the findings of fact made by the industrial commissioner, when these are supported by the evidence, even though it may be thought there be error."

We said in the same case that his finding of fact on whether there was an employment is conclusive if the evidence be in conflict, or be open to the drawing of different inferences. In *Pierce v. Bekins V. & S. Co.*, 185 Iowa 1346, we declared:

"The effect of the *Griffith* case [183 Iowa 415] is that we cannot review a finding of fact unless the transcript makes it appear, as matter of law, that such finding is not sustained by or is contrary to the evidence, and say in that connection that 'the court may not go into a general fact controversy.'"

On application of these, and of statute provision that we shall not have fact questions submitted to us, the sole question now is whether we may say that there was no conflict, no room for the drawing of different inferences, and that, therefore, as matter of law, the finding of the commissioner is not sustained by the competent evidence.

III. One line of evidence is this: The plaintiff's general business was teaming, which he pursued with his own team. For the most of the year, he hauled for the city and for material-men, thus obtaining steadier work and better pay than defendant could give him. He hauled coal for defendant only when the demand for coal was so acute that there was more hauling than the regular employees of the defendant could handle. He admits he earned his livelihood by using his own team, and

working for different people with it. While he generally obtained coal hauling when he asked defendant for it, and though, during some five weeks prior to his injury, he did haul for defendant, he was at no time sure of obtaining it, knew at no time how much hauling he could get to do, or how long it would last. All hauling was paid for by the load, and settlement made weekly. He could apply for this work when he pleased, and abandon it at any moment. He did the hauling with his own team. He was at liberty to decline any job of hauling for defendant, and hauled coal for its competitors without subjecting himself to a refusal by defendant on later application to haul coal for it. It follows defendant had no right to and did not exercise any control over when plaintiff should or should not work for it, and its only power was to refuse him work, which, as it happens, was a power it never exercised. The engagement between the parties was that, if plaintiff applied for any hauling, and defendant had some, plaintiff would be permitted to haul. If there was no hauling when he applied, he would be advised when a job did turn up, and be permitted to haul. When there was no more hauling available, defendant would advise plaintiff of that fact, whereupon he would depart. Defendant was not concerned in whether Norton loaded or unloaded the wagon himself, or with help hired by him. If he encountered any difficulty, his was the task of overcoming it. If he needed help, it was for him to hire and pay for it; and he did hire help on more than one occasion. He was told where to get coal to load, and to whom to deliver it. On delivery, he was to obtain a receipt, and this would be the basis of settling how much was due him.

He was injured while engaged with his own team in delivering coal that he was hauling for defendant. While walking beside the wagon, it passed over his foot. He was alone, and was handling his own team.

In effect, his so-called employment did not differ from employing a drayman, as to whom the cases stress the fact that they are not employees, because, owing to the indefinite character and amount of their work, the right to discharge is never created. *Tuttle v. Embury-Martin Lbr. Co.*, 192 Mich. 385 (158 N. W. 879). In effect, his status does not differ from the one of

a passenger in a taxi. The general consensus of authority is that the taxi driver is not the employee of the passenger, though the latter can direct him when to start, what route to travel, and as to where the passenger is to be discharged. See *Ash v. Century Lbr. Co.*, 153 Iowa 523; *Cram v. City of Des Moines*, 185 Iowa 1292; *Stewart v. California Impr. Co.*, 131 Cal. 125 (63 Pac. 177); *Frerker v. Nicholson*, 41 Colo. 12 (92 Pac. 224); and *Western Indem. Co. v. Pillsbury*, 172 Cal. 807 (159 Pac. 721).

In *Ash v. Century Lbr. Co.*, 153 Iowa 523, we held there was no "employment." There, the driver teamed, on the whole, more for others than for defendant. He was engaged in an occupation other than serving defendant, except at times when his independent business of teaming was less profitable than teaming for defendant during the rush season. And this was held, though the driver was paid even when the foreman of defendant, on occasion, directed this driver to haul for others. We held, in *Storm v. Thompson*, 185 Iowa 309, that the claimant was engaged in an independent business which he styles "tree work," and he had supplied himself with the needed tools. In denying him the relationship of an employee, and holding that he was a contractor, we said that, where there is no right to regulate the time for performance, except in so far as the law implies a duty to complete within a reasonable period, there is no employment, because there is control over nothing except such as is addressed to the general result. And see *Perham v. American Roof Co.*, 193 Mich. 221 (159 N. W. 140).

IV. Norton is not an employee, within the act, because there was no right to discharge him, and the right to discharge for misconduct or disobedience is an essential test. *Pace v. Appanoose County*, 184 Iowa 498; *Ash v. Century Lbr. Co.*, 153 Iowa 523; *Pillsbury's case*, 172 Cal. 807 (159 Pac. 721); *Stewart v. California Impr. Co.*, 131 Cal. 125 (63 Pac. 177); *Quarman v. Bennett*, 6 M. & W. 497; *Tuttle v. Embury-Martin Lbr. Co.*, 192 Mich. 385 (158 N. W. 879); *Carleton v. Foundry & M. P. Co.*, 199 Mich. 148 (165 N. W. 816, at 817); *Pioneer F. C. Co. v. Hansen*, 176 Ill. 100 (52 N. E. 17); *Butler v. Townsend*, 126 N. Y. 105 (26 N. E. 1017); *Litts v. Risley Lbr. Co.*, 224 N. Y. 321 (120 N. E. 730). There was no right to discharge, because, as said, claimant had virtually the status of a drayman.

Plaintiff could not tell, when he came, whether he would get any work. He was not obliged to accept any that was offered. He was at all times at liberty to haul for others, rather than defendant. The most that could be done was to refrain from giving him coal to deliver. The only power the defendant had was to elect whether he should be given work, and how long it should continue. There was the right to interrupt or terminate the contract, but not to discharge. *Pace v. Appanoose County,* 184 Iowa 498. We said, in *Ash v. Century Lbr. Co.,* 153 Iowa 523:

"While the defendant at any time might have interrupted the employment of the man and team in hauling, it was without authority to discharge Cruse as driver of Mrs. Wright's team, or to substitute another in his stead."

Certainly, Norton was the owner of the team with which he did the hauling, and as certainly defendant could not substitute another to drive this team, without the consent of Norton.

V. One can so engage himself and his team to another as that the latter shall be in control of both. But he does not become a servant, merely because he engages himself and his own team to work for another. To make the relationship, the master must be in control of both man and team. *Ash v. Century Lbr. Co.,* 153 Iowa 523; *Pace v. Appanoose County,* 184 Iowa 498; *Morris v. Trudo,* 83 Vt. 44 (74 Atl. 387); *Huff v. Ford,* 126 Mass. 24; *Driscoll v. Towle,* 181 Mass. 416 (63 N. E. 922).

Defendant was given no right whatever to control the management and care of the team, and it never attempted to exercise any control on that head. The care and management remained entirely with Norton.

VI. The relationship of master and servant does not exist, unless there be the right to exercise control over methods and detail,—to direct how the result is to be obtained. The power to direct must go beyond telling what is to be done,—to telling "how it is to be done." *Zeitlow v. Smock,* 65 Ind. App. 643 (117 N. E. 665); *Prest-O-Lite Co. v. Skeel,* 182 Ind. 593. The only right defendant had to exercise control over methods and detail, and the only right on that head that was exercised, was to direct plaintiff where to get his coal, and the kind and the amount; that he should then drive on the scale and weigh, and

then scale or trim the load or add to it, as defendant might direct; to direct to whom delivery should be made, and that a receipt be obtained, as the basis for giving proper credit for the haul.   There was no right to exercise control, and none was exercised, over the speed with which delivery should be made or the route that should be taken in making delivery.   There was less control or right to control in the case before us than there was in the many cases wherein it was held that it was not sufficient control over method and detail to constitute an employment.   Among them are *Pace v. Appanoose County,* 184 Iowa 498; *Stewart v. California Impr. Co.,* 131 Cal. 125 (63 Pac. 177); *Tuttle v. Embury-Martin Lbr. Co.,* 192 Mich. 385 (158 N. W. 879); *Pillsbury's* case, 172 Cal. 807 (159 Pac. 721); *See v. Leidecker,* 152 Ky. 724 (154 S. W. 10); *Zeitlow v. Smock,* 65 Ind. App. 643 (117 N. E. 665); *Ash v. Century Lbr. Co.,* 153 Iowa 523.

In *Smith v. State Workmen's Ins. Fund,* 262 Pa. 286 (105 Atl. 90), there was the right to exercise much more control over details than exists in this case, and yet it was held that the relation of master and servant had not been created.   There was the right to direct that the transferring of freight to be done by claimant should be done in a good and workmanlike manner; that leather cars should be by him loaded in accordance with instructions from a named tanning company; and he was to load or unload each standard gauge car within the time limit that would avoid demurrage charges.

In *See v. Leidecker,* 152 Ky. 724 (154 S. W. 10), adopted in *Pace v. Appanoose County,* 184 Iowa 498, it was held the relationship did not exist, though the right given and exercised, to direct as to details, was vastly more plenary than exists or was exercised in the case at bar.   And the holding of the *Leidecker* case is fairly supported in *Zeitlow v. Smock,* 65 Ind. App. 643 (117 N. E. 665).

In *Ash v. Century Lbr. Co.,* 153 Iowa 523, the foreman of defendant gave written orders to the driver for a load of lumber, and directed him where to take it; and he directed, too, that, on delivery, the driver would obtain a ticket signed by the recipient, and return it to the office.   There, the foreman "used his judgment which team shall take this order or that order," and "the

directions are put there on the paper where to take it.'' Sometimes the foreman would ''direct them which road, if he knew the best place to go.'' We held there was no such right to direct and control as to methods and details as would make the driver the employee of the defendant. And see *Tuttle v. Embury-Martin Lbr. Co.,* 192 Mich. 385 (158 N. W. 879).

## 6-a

It is elementary doctrine, and it would fill many pages to cite the support it has, that one is not an employee if he may choose his own method of working,—the mode and manner of doing the work. We select *Smith v. State Workmen's Ins. Fund,* 262 Pa. 286 (105 Atl. 90); *Pace v. Appanoose County,* 184 Iowa 498; *Ash v. Century Lbr. Co.,* 153 Iowa 523; *Butler v. Townsend,* 126 N. Y. 105 (26 N. E. 1017). It has been summed by the statement that it is immaterial that there be power to prescribe *what* is to be done, unless it includes the power to say ''how it is to be done.'' *Zeitlow v. Smock,* 65 Ind. App. 643 (117 N. E. 665); *Prest-O-Lite Co. v. Skeel,* 182 Ind. 593 (106 N. E. 365).

It is not enough that there be power to see to it that the work is done to the satisfaction of the one who gives it. This power is control over ultimate results, and not over methods, means, and details. *Humpton v. Unterkircher,* 97 Iowa 509; *Prest-O-Lite Co. v. Skeel,* 182 Ind. 593 (106 N. E. 365); *Zeitlow v. Smock,* 65 Ind. App. 643 (117 N. E. 665). It is not direction looking to the final result, but as to means, that is controlling. We select: *Ash v. Century Lbr. Co.,* 153 Iowa 523, at 532; *Pace v. Appanoose County,* 184 Iowa 498; *Casement v. Brown,* 148 U. S. 615 (13 Sup. Ct. Rep. 672). It was said in *Storm v. Thompson,* 185 Iowa 309, to be the consensus of the authorities that there is no employee unless the master may select the means by which the result is to be accomplished. And see *Overhouser v. American Cereal Co.,* 118 Iowa 417; *Francis v. Johnson,* 127 Iowa 391. There is an independent contractorship where the manner of operating the engine is not specified, and there is no control over the ''details'' of the work, as distinguished from the result,—the manner of doing the work. There must be the right to dictate the details of the methods to be

employed. Shearman & Redfield on Negligence (6th Ed.), Section 166. And see *Leidecker's* case, 152 Ky. 724 (154 S. W. 10), also approved in the *Pace* case; 26 Cyc. 970; *Storm v. Thompson,* 185 Iowa 309; *Pace v. Appanoose County,* 184 Iowa 498; *Litts v. Risley Lbr. Co.,* 224 N. Y. 321 (120 N. E. 730).

The mere making of suggestions as to the methods of work to be pursued will not establish the relationship of master and servant, even though the suggestion be as to details or as to the co-operation necessary to bring about the larger general result. *Carleton v. Foundry & M. P. Co.,* 199 Mich. 148 (165 N. W. 816); *Casement v. Brown,* 148 U. S. 615 (13 Sup. Ct. Rep. 672).

### 6-b

In *Ash v. Century Lbr. Co.,* 153 Iowa 523, it is held to be significant on, but not conclusive of, whether there was the relationship of employer and employee that the latter is paid by the day. Norton was paid by the load. But even in cases where the payment was a fixed sum per day, it was held that the status of independent contractor has not been changed for that of a servant. We select: *Chisholm v. Walker & Co.,* 2 B. W. C. C. 261; *Ryan v. County Council,* 49 Ir. L. T. 1; *Litts v. Risley Lbr. Co.,* 224 N. Y. 321 (120 N. E. 730). That was the holding in the *Pace* case, 184 Iowa 498, where claimant was to be paid $14 a day for work by himself or a man and a team, with use of claimant's engine, and a day was to be 10 hours; and in *Pillsbury's* case, 172 Cal. 807 (159 Pac. 721), where the wagon was to be used 8 hours a day.

VII. Some of the cases have much similarity to this case as a whole, but exhibit less reason for finding against employment than appears in this case.

The *Pace* case approves *Busse v. Brugger,* 3 Annual Rep. (1914) Wisconsin Industrial Com. 78. There, the applicants owned an ensilage-cutting outfit, an ensilage-cutter machine, and a silo-filling outfit. They engaged to farmers to cut and fill, and gave their personal services, as far as necessary to operate the machinery, and did so at a stated sum per hour for the time actually consumed in filling the silo. The farmer furnished the gasoline only. It was held that these men were independent contractors. It was emphasized that they had the right to com-

plete the job; that the farmer had reserved no control, and could discharge neither of the applicants; and that nothing could be required of the applicants, except, in a general way, to run the machinery and so feed the corn and so work as that the general result desired would be obtained. In *Chisholm v. Walker & Co.*, 2 B. W. C. C. 261, the applicant owned a horse, and engaged to drag logs of timber for respondent at 8 shillings a day. He was not required to give his personal services. Lord Justice Clerk said:

"On the facts stated here, I cannot find anything to indicate that this man was a servant, employed by a master and remunerated by wages: that is, at so much per day or per hour or per piece. The present case is a case in which a man who has a horse of his own goes to a firm of timber merchants; they say that they want logs removed from one place to another; he says, 'I have a horse, I shall bring it and work any day you wish me to do so, and for that you will pay 8s. a day.' There is nothing there of the nature of wages. It would have been the same thing if he had brought 20 horses to do the work, instead of one. The contract was that he should get the work done. It was not a contract that he should do the work personally, but that he should do it in the only way in which it could be done, by having somebody to lead the horse. That is not a contract of service."

*Ryan v. County Council*, 49 Ir. L. T. 1, approved in the *Pace* case, has quite a similarity to the case at bar. Deceased owned a horse and cart, and did a carting business. For several years, he had hauled stones for the county council; though he did not work continuously, but for a day or a part of a day, as he wished, being under no obligation to do the work at any particular time or in any particular manner or to do any particular amount on any one day. He was not controlled in the work by the council, except that their surveyor told him whether and where he desired the stones to be hauled. Ryan was kicked by his horse while harnessing it, preparatory to going to work to haul the stones; and, relying largely on *Chisholm v. Walker & Co.*, 2 B. W. C. C. 261, the court held Ryan to be an independent contractor.

VIII. In some cases upon which we have drawn, the claim-

ant was furnished to defendant by a third person, or the one injured was a third person, or claimant did not work in person; and in some of these cases two or all three of these conditions were present. We think that the presence of one or all of these conditions exhibits a distinction which works no difference.

It can make no difference that, additional to furnishing the team, Norton worked with it himself. In *Western Indem. Co. v. Pillsbury*, 172 Cal. 807 (159 Pac. 721), Stevens was held to be an independent contractor, where he, in addition to furnishing teams and drivers, drove, himself. In the *Pace* case, 184 Iowa 498, Pace was held to be an independent contractor, though he had the right to have someone other than himself operate his engine or drive his team, or to do this operating and driving, himself. And we said that, under such circumstances, the authorities are all but conclusive that Pace should be deemed an independent contractor, rather than the employee of the county. The case of *Chisholm v. Walker & Co.*, 2 B. W. C. C. 261, declares that he is not a servant, though he do work, if he is to furnish a horse as one means of doing the work. In *Ash v. Century Lbr. Co.*, 153 Iowa 523, this from *Quarman v. Bennett*, 6 M. & W. 497, is approved:

"And whether such servant has been appointed by the master directly, or intermediately though the intervention of an agent authorized by him to appoint servants for him, can make no difference."

8-a

Had a third person furnished the team, and Norton as its driver, it would scarcely be questioned that, under the record in this case, defendant would not have been liable, had the negligence of Norton injured someone other than Norton. See *Ash v. Century Lbr. Co.*, 153 Iowa 523; *Quarman v. Bennett*, 6 M. & W. 497, as approvingly analyzed in the *Ash* case; *Delory v. Blodgett*, 185 Mass. 126 (69 N. E. 1078), approved in the *Ash* case; the dissent in *Howard v. Ludwig*, 171 N. Y. 507 (64 N. E. 172), to which the *Ash* case inclines, as against the majority opinion; *Morris v. Trudo*, 83 Vt. 44 (74 Atl. 387); *Stewart v. California Impr. Co.*, 131 Cal. 125 (63 Pac. 177).

Now, the great weight of authority holds that one test of

whether one is a master is whether he would be liable to third persons for misconduct of the alleged servant. See *Holbrook v. Olympia Hotel Co.*, 200 Mich. 597 (166 N. W. 876). Why is not that a test here? If someone other than Norton had furnished Norton and a team to defendant, and in hauling coal had injured some stranger, it would be conceded defendant is not liable. If that immunity rests on the fact that Norton and his team were furnished by someone other than Norton, rather than by Norton, and on the fact that he did the injuring, instead of being injured, then this rule is not a test in this case. But the basis of the immunity is not that the driver did not furnish himself and the team, nor that the driver injured, instead of being injured. Such furnishing by a third person is but a circumstance tending to prove the ultimate defense that defendant had no right to exercise control. But such facts are not the only evidence of that ultimate fact. Other facts may prove that defendant lacked control over one who owned the team and did the driving. The test is not, who did the actual hauling or who owned the team, but is whether defendant had or had not control of the methods and details of doing the work. It follows that, if there was no right to control methods and details, it is quite immaterial that Norton, rather than a third person, owned the team with which Norton worked, or that, though he did the work himself, he might have substituted another for it, or that he injured himself, rather than a third person. With the essential right to control details and methods lacking, with the power of managing his own team permitted to remain in him, then, though he did the driving himself, and injured himself, instead of a third person, that cannot make him an employee.

It is our judgment that there is sufficient competent evidence to sustain the finding of the industrial commissioner. It follows that the district court erred in annulling his order, and that the judgment of that court must be—*Reversed.*

LADD, EVANS, PRESTON, STEVENS, and ARTHUR, JJ., concur in result, on ground stated in last paragraph.

WEAVER, C. J. (dissenting). I. While the statute referred to by Mr. Justice Salinger, at the outset of his opinion, is cor-

rectly quoted, so far as it goes, it omits the context, without which its force and application may be misapprehended. The subsection so cited (Code Supplement, 1913, Section 2477-m16) contains the legislative definition of the words "workman" and "employee" as being synonymous terms, and meaning "any person who has entered into the employment of, or works under contract of service, express or implied, or apprenticeship for an employer, except a person whose employment is purely casual and not for the purpose of the employer's trade or business * * * provided that one who sustains the relation of contractor with any person, firm, association, corporation or the state, county, school district, municipal corporation, cities under special charter or commission form of government, shall not be considered an employee thereof."

It will thus be seen that, subject to the express exceptions found in the statute itself, the Compensation Act embraces within its scope all employers and all employees, without reference to their classification at common law. It addresses its provisions, not to master and servant in the strict technical sense, but to "employer" and "employee," and prescribes for itself the meaning which shall be given to these terms. Observing this statute, the sole question in cases of this character is whether the claimant of compensation entered the employment of the defendant or worked for him under contract of service, express or implied, and whether the injury of which he complains "arose out of and in the course of his employment." If this inquiry be answered in the affirmative, it matters not what may be the nature of the service performed, or what the terms of the contract may be: the parties are thus brought within the scope of the act, and to this alone we must look for the measure of their mutual rights and obligations. If there be a contract of service, either express or implied, and the employee does not occupy the relation of a mere contractor, it is wholly immaterial whether he works by the year, month, day, or hour; whether his employment be for a fixed period or is terminable at the will of either party, or whether he receives payment on the basis of the time employed or of the work accomplished. That plaintiff did, in fact, work under contract, and receive injury arising out of and in the course of his employment, is shown without dispute;

and the sole question for our consideration is whether he must be denied compensation on the theory that he was an independent contractor, within the meaning of the exception already quoted from the statute. The majority opinion affirms this proposition, —a conclusion which I think is demonstrably wrong.

It is true, as suggested by the opinion, that the commissioner found for the appellant, that plaintiff was a contractor, and therefore not entitled to compensation. It is also true, as further suggested, that, where the facts found by the commissioner have support in the evidence, such finding is not open to review on appeal; but it is equally well settled that, when the "transcript makes it appear, as a matter of law, that such finding is not sustained by competent evidence, or is contrary to the evidence," the court may, on appeal, reverse the erroneous judgment. See *Griffith* case, 183 Iowa 415; *Pierce v. Bekins V. & S. Co.*, 185 Iowa 1346.

The case now before us is one calling loudly for an application of such rule.

II. The rule that the act should be liberally construed, and its provisions so applied as to promote the intended relief to injured employees, is quoted by the majority—though for what purpose is quite undiscoverable; for, in its discussion of the facts and law of the case, the opinion treats the rule of liberal construction less as a standard by which the court is to be guided than as a starting post from which to sail away and never return.

III. As illustrating the tendency, I call attention to pertinent facts concerning which the majority goes far astray. It is true, the plaintiff owned a team of his own, and during the summer season earned his living principally by work for the city. As winter approached, and city work slackened, he gave his time and attention to hauling coal; and for several winters he had found employment in that line with the defendant coal dealer. At the opening of the winter in question, he went to the defendant's office, and sought again to take up the work of hauling coal in their service, and was told to be on hand the next morning for that purpose. It was arranged that he should use his own team and wagon, the defendant furnishing a wagon box, on which its name was painted. For the work of hauling and

delivering coal to defendant's customers, plaintiff was to receive from 75 cents to $1.25 per ton, according to the distance over which the deliveries were made. In each instance, the load was made up at defendant's place of business or at the railway track. When weighed, duplicate tickets were given the plaintiff, with directions as to the place of delivery. It was his business then to haul the coal to the customer, unload, obtain the purchaser's receipt on one of the tickets, and return it to the defendant's office. This process was repeated as often as the business of the day required. He had been engaged in this work steadily for about five weeks. He did no hauling for any other employer. At times, the work would be completed before nightfall; and in such case, he went to his home, where he remained until the following morning. He says that, on quitting for the day, he was told by defendant to be on hand in the morning, and that he made the practice of reporting to his employer each morning about 7 o'clock.

In all this there is nothing whatever inconsistent with the plaintiff's relation as the employee of the defendant, and nothing whatever to characterize him as an independent contractor. In face of this showing, it seems strange that the opinion should say that the "claimant could go or come when he pleased, and work or not work, as he pleased. He had the right to say what time he would devote to coal hauling. He could decline, from time to time, to haul at all," etc. If this be literally true (though it is not true in the apparent sense intended), what of it? It is equally true of every person engaged in the service of another. The hired workman or servant is not a slave, nor is his employer clothed with absolute authority to control his servant's movements. The one may drop the service at any moment, and the other may sever the relation and peremptorily discharge the employee; and the possession or exercise of such power does not prove that the relation between them is that of contractor and contractee. The plaintiff was both employed and engaged in the business of hauling coal for defendant. He had been steadily so employed and engaged for at least five weeks, and, but for his injury, would doubtless have continued in that relation for the remainder of the winter, as he had on previous occasions.

There is still another proposition, which seems to have

evaded the attention of courts and law writers, until brought forth to complete the wall of defense which the opinion laboriously erects around the employer in this case. It is repeatedly pointed out and insisted that plaintiff used his own team in defendant's service, and that this, if nothing else, emphasizes the conclusion that plaintiff was a contractor. By insistent repetition of this point, the writer of the opinion so far convinces himself as to declare that, even if the owner of a team is engaged with it in the service of another, "he does not become a servant, if he does not yield to that other the control or management of the team. To make that relationship, the master must be in control of both man and team." In support of this dictum, we are cited to the case of *Ash v. Century Lbr. Co.*, 153 Iowa 523,—an authority not involving in any manner the Workmen's Compensation Act, and having only a remote bearing on any issue in this case. That the proposition of the opinion is incorrect has been settled in many cases, as I shall soon show.

A person who provides his own horse, and undertakes with the proprietor of a dairy to cart milk to and from a creamery during a certain period, on such dates as the proprietor should fix, and to receive pay at a rate per gallon of the milk hauled, is a servant, and not a contractor. *Clark v. Co-operative Society*, Law Reports Curr. Dig. 1913, Vol. 772.

A workman employed to cart stone, using his own cart and horse, and paid by the day, and working for other people when not needed by such employer, is a workman, under the Compensation Act. *McNally v. Fitzgerald*, 7 B. W. C. C. 966.

The precedents to this general effect are numerous, but I will extend this dissent no further than to cite two comparatively recent cases, which are entirely parallel, in fact and principle, with the case at bar. In *Tuttle v. Embury-Martin Lbr. Co.*, 192 Mich. 385 (158 N. W. 879), the defendants were the owners of saw logs which they desired hauled from the skidway to a distant sawmill. For this purpose it employed, not only its own teams and drivers, but others as well. The plaintiff, owning a team of his own, applied for work, and he was engaged to do hauling. He was to use his own team and outfit, except for a sleigh furnished by defendant. He lived and boarded at home, kept, cared for, and drove his own team, and was to receive $2.00

per thousand feet for logs hauled by him. Ordinarily, he made one trip a day, but no requirement to this effect was placed upon him. He controlled his own working hours, and was under no compulsion to work every day. He was assisted in loading, and sometimes in unloading, by defendant's employees, but drove his own team, chose his own route, and controlled the size of the loads which he hauled. The logs were measured at the mill, and the driver given a slip or ticket, upon return of which to the office he was credited with the amount, and paid accordingly. Plaintiff, being injured in this work, claimed compensation under the statute of that state, which is quite like our own in its provision that it shall apply to every person, firm, and corporation "who has any person in service under any contract of hire, express or implied, oral or written." The defendant resisted the claim, as is done in this case, on the theory that plaintiff was not an employee or servant, but a contractor, and supported its defense by the same arguments relied upon by the majority in this case.

The court, basing its conclusion upon the statute and upon the admitted facts, and referring to authorities upon the distinction between employee and contractor, says:

"In some cases, much stress is laid upon the fact that the work to be performed is of an indefinite amount, subject to discharge and control in that regard. Others, whether the employment is of a general, independent character, like that of draymen and common carriers, becomes the controlling question. We are of the opinion that the test of the relationship is the right to control. It is not the fact of actual interference with the control, but the right to interfere, that makes the difference between an independent contractor and a servant or agent. 26 Cyc. 1547. In our opinion, there was such control over the work of Tuttle, by the company, as makes it inconsistent to say that Tuttle was an independent contractor. His work was limited by the right of the company to terminate it at any time, and it was for no definite period or amount. The loading and unloading were under control of the company, both as to time and place. True, he was in charge of his team while going from the skidway to the mill, but that was true of all the drivers, whether working by the month or the thousand."

Still more strikingly identical with the present case is *Waters
v. Pioneer Fuel Co.*, 52 Minn. 474. There, the plaintiff, as in this
case, was hauling coal for the defendant. He owned and used
his own team and the running gear of a wagon, for which the
defendant furnished a wagon box. He was not sure of business
every day, and could quit when he wanted to. He was paid
every Saturday,—a fact which, the court says, tends to show that
the employment was continuous until suspended. He was paid
by the ton for the coal hauled by him. The manner of doing
the business was precisely like that pursued in the instant case.
When the dealer received a customer's order for coal, it was
delivered to the hauler to execute. He loaded the coal, took it
to the specified place, got the money for it, or took a receipt
acknowledging its delivery, and returned it to his employer.
Upon these facts, the court, being called upon to determine
whether the workman's relation to the defendant was that of
employee or contractor, said:

"We think this evidence shows that the person who delivered
the coal was in the service of the defendant, though the term of
service was precarious; and we do not see that it is material
that he was paid by the load, by the hour, or by the day for his
work. He represented the master in all the details of the work
enumerated, and, while he remained in defendant's employment,
he was subject to its control. If he had been at work by the day
or by the month, and had been furnished with a team and wagon
by the defendant, would the circumstances of the delivery have
been any different? Or would the control of the defendant over
the acts of the employee have been otherwise or greater than
it was? His orders were to collect the pay for the coal in advance.
If it had not been so paid for, he would have been obliged to
have brought the coal back to the yard. The testimony shows
that he had worked for the company about three months, haul-
ing coal daily. He had, in the meantime, rendered service for
no one else, and appeared to be subject to its orders, and was
treated as one of its teamsters or drivers. It is not easy to frame
a definition of the terms 'independent contractor' that will sat-
isfactorily meet the conditions of different cases as they arise, as
each case must depend so largely upon its own facts. One text-
writer declares such contractor to be one who undertakes to do

specific pieces of work for other persons without submitting himself to their control in the details of the work, or one who renders the service in the course of an independent employment, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished. 1 Shear. & R. Neg., Secs. 164, 165. So it is said that an independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer, except as to the result of the work. *Powell v. Virginia Const. Co.*, 88 Tenn. 692 (13 S. W. 691). The plaintiff is not concluded by these definitions. But, without attempting to discuss abstract definitions, we feel satisfied that, upon the undisputed facts in the case, the court was right in holding that the relation existing between the defendant and the carrier of the coal was that of master and servant.''

The distinction between employee, or servant, and independent contractor has often been considered by the courts, but no statement of the rule has yet been accomplished which perfectly fits every case. The rule quoted above by the Minnesota court from Shearman & Redfield's Negligence is perhaps the one most generally approved. But while the reserved right of the employer to control the details of the work is the most obvious test of the relations of employer and employee, it is to be kept in mind that it is the power or authority to control, and not the control actually exercised, to which we must look in reaching our conclusion. As having bearing on the point here discussed, see, also, *Madisonville H. & E. R. Co. v. Owen*, 147 Ky. 1; *Hamilton v. Oklahoma Trad. Co.*, 33 Okla. 81 (124 Pac. 38) ; *Cockran v. Rice*, 26 S. D. 393 (128 N. W. 583) ; *Macdonald v. O'Reilly*, 45 Ore. 589; *State Acc. Fund v. Jacobs*, 134 Md. 133 (106 Atl. 255) ; *State v. District Court*, 128 Minn. 43 (150 N. W. 211) ; *City of Tiffin v. McCormack*, 34 Ohio St. 638; *Mullich v. Brocker*, 119 Mo. App. 332; *O'Donnell v. Clare County*, 6 B. W. C. C. 457; *Thompson v. Twiss*, 90 Conn. 444 (97 Atl. 328) ; *Baldwin v. Abraham*, 67 N. Y. Supp. 1079; *Komula v. General A. F. & L. Assur. Co.*, 165 Wis. 520 (162 N. W. 919) ; *Madix v. Hochgreve Brew. Co.*, 154 Wis. 448 (143 N. W. 189). The plaintiff in this case did not undertake to haul or deliver any specific

amount of coal. He did not undertake the performance of an entire contract for a gross price, and either party was free to terminate the relation at any time, without any liability to the other for damages.

The defendant was a dealer, receiving orders and calls for coal from individual consumers scattered over the city, necessitating the employment of haulers, by whom such orders could be filled. The plaintiff was employed for that purpose. Such service implied authority on the part of the defendant to direct when, where, and to whom deliveries were to be made, and duty on plaintiff's part to observe all reasonable and proper directions with reference to the work he undertook to perform. He was at all times at the beck and call of his employer, in a manner and to an extent inherently inconsistent with the independence of a contractor.

It is wholly immaterial whether he engaged in other work in the summer season, or served different employers on other occasions, or that this employment was for no definite period, and might be terminated at any time. Subject to the statutory exceptions, and no other, the law imposes on the employer the obligation to make compensation to his employees for injuries arising out of and in the course of their employment, without regard to the nature or terms or tenure of the service performed by them. It also imposes upon the arbitrators, the commissioner, and the courts the duty of liberal construction of its terms; and if, in any given case, the proved facts leave the question in doubt whether the relation between the parties is that of employer and employee, or contractor and contractee, an observance of the rule last mentioned requires the doubt to be resolved in favor of the claimant. So far as this case is concerned, we need not go to this extent; for there is no room for reasonable doubt of the plaintiff's right to the compensation adjudged to him by the trial court.

Such award is not the imposition of a penalty. The statute provides no penalty nor punishment. It simply recognizes the essential justice of making an industry or business bear, in some reasonable degree, the burden of the human wreckage which its prosecution brings about. In this manner, and by providing for insurance against such liability, the ultimate loss falls upon so-

ciety at large, for the benefit of which all work is done and all business is transacted.

The opinion prepared for the majority is destructive of the statute, both in letter and in spirit. It ought not to have our approval. The judgment appealed from should be affirmed.