## KREIPKE v. COMMISSIONER OF INTERNAL REVENUE.

Circuit Court of Appeals, Eighth Circuit. April 19, 1929.

No. 8262.

A. C. Saunders, of Tulsa, Okl. (L. E. Cahill and Claude Collard, both of Tulsa, Okl., on the brief), for appellant.

Harvey R. Gamble, Sp. Asst. Atty. Gen. (Mabel Walker Willebrandt, Asst. Atty. Gen., Sewall Key, Sp. Asst. Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Allin H. Pierce, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for appellee.

Before KENYON, Circuit Judge, and FARIS and SANBORN, District Judges.

KENYON, Circuit Judge. This is an appeal from a decision of the United States Board of Tax Appeals holding that the profits derived by appellant under certain construction contracts made with the state of Oklahoma were not exempt from federal income taxes.

From 1919 to 1922 appellant was a member of a partnership known as Kreipke-Schafer Company, which partnership entered into eight contracts with the state of Oklahoma for the erection or repair of certain buildings and repairs to other property of the state. These projects and the profits derived therefrom were as follows:

| Description. | Amount of Profit. |
| --- | --- |
| Enid dam | $ 4,541 36 |
| Goodwill Science Hall | 2,552 85 |
| Livingston school building | 2,784 71 |
| Repairs—State Capitol building | 73 68 |
| Pauls Valley Training School | 5,024 71 |
| Stillwater school building | 15,283 25 |
| Tonkawa Wilkin Hall | 390 04 |
| Warehouse—Adjutant general | 4,004 37 |
| | $34,654 97 |

Each project was covered by a separate contract which was executed on the same kind of printed form, and designated: "Uniform Contract Adopted and Recommended for General Use by the American Institute of Architects and the National Association of Builders." As these contracts will hereinafter be referred to, no detailed description thereof is necessary at this time. The profits therefrom amounted to $34,654.97, which the Commissioner of Internal Revenue held was taxable income, and a tax of $5,593.12 was assessed as a deficiency income tax for the year 1922. The case before the Board of Tax Appeals seems to have been tried on the theory, either that the profits of the partnership belonged to appellant, or that he received the $34,654.97 from the partnership. As this does not seem to be questioned, we accept the theory on which the case proceeded before the Board of Tax Appeals. It should be stated, however, that appellee does question whether or not such profits were compensation for personal service.

The Revenue Act of 1921, c. 136, 42 Stat. L. p. 237, provides as follows: "Sec. 213. That for the purposes of this title (except as otherwise provided in section 233) the term 'gross income'—(a) Includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, * * * or gains or profits and income derived from any source whatever." This statute is broad enough to cover the compensation received by appellant from the state of Oklahoma.

Appellant claims exemption, however, from the tax by virtue of section 1211 of the Revenue Act of 1926 (26 USCA § 1065b), which is as follows: "1065b. *Salaries of state and municipal officers; abatement, credit, or refund of taxes thereon.* Any taxes imposed by the Revenue Act of 1924 or prior Revenue Acts upon any individual in respect of amounts received by him as compensation for personal services as an officer or employee of any state or political subdivision thereof (except to the extent that such compensation is paid by the United States Government directly or indirectly), shall, subject to the statutory period of limitations properly applicable thereto, be abated, credited, or refunded." If appellant was an officer or employé of the state of Oklahoma or a political subdivision thereof, he is exempt from the tax in question. To discuss the question as to whether or not he is an officer of the state under said section would be a waste of time. He was not. United States v. Hartwell, 6 Wall. 385, 18 L. Ed. 830; United States v. Germaine, 99 U. S. 508, 25 L. Ed. 482; Hall v. Wisconsin, 103 U. S. 5, 26 L. Ed. 302; Metcalf & Eddy v. Mitchell, 269 U. S. 514, 46 S. Ct. 172, 70 L. Ed. 384.

Was he an employé of the state under the terms of section 1065b, supra, or was he an independent contractor?

He had been engaged in the contracting business for some 35 years and was in control of an organization consisting of a graduate structural engineer, a heating and plumbing engineer, an auditor, a bookkeeper, a stenographer, and various superintendents of construction. If appellant was an independent contractor, then he is not within the exemption of the statute relied on. Much has been written on the subject of whether a person employed by another is a mere employé or is an independent contractor. No exact rule can be laid down to fit every condition of facts. Difficult questions arise under the application of any rule to varied circumstances, and fine shades of distinction often are determinative of the question.

In New Orleans, M. & C. R. Co. v. Hanning, 15 Wall. 649, 657 (21 L. Ed. 220) the test is stated to be whether the power is reserved "not only to direct what shall be done, but how it shall be done." In Singer Mfg. Co. v. Rahn, 132 U. S. 518, 523, 10 S. Ct. 175, 176 (33 L. Ed. 440) the court says: "The relation of master and servant exists whenever the employer retains the right to direct the manner in which the business shall be done, as well as the result to be accomplished, or, in other words, 'not only what shall be done, but how it shall be done.'" The same test is laid down in Chicago, R. I. & P. R. Co. v. Bond, 240 U. S. 449, 36 S. Ct. 403, 60 L. Ed. 735, where a person was

held not to be an employé of the company, but an independent contractor, because while the railroad did retain control of what should be done by him it had no control as to how the work should be done. In Casement v. Brown, 148 U. S. 615, 622, 13 S. Ct. 672, 675 (37 L. Ed. 585) the court said: "Obviously, the defendants were independent contractors. The plans and specifications were prepared and settled by the railroad companies; the size, form and place of the piers were determined by them, and the defendants contracted to build piers of the prescribed form and size and at the places fixed. They selected their own servants and employés. Their contract was to produce a specified result. They were to furnish all the material and do all the work, and by the use of that material and the means of that work were to produce the completed structures. The will of the companies was represented only in the result of the work, and not in the means by which it was accomplished."

Metcalf & Eddy v. Mitchell, supra, is an important and controlling case on the questions here involved. Plaintiffs there, Metcalf & Eddy, were consulting engineers employed to advise states or subdivisions with reference to proposed water supply and sewage disposal systems. They claimed exemption from income taxes by virtue of the same section of the statute as appellant relies on. The court held they were not employés within the meaning of the statute but were independent contractors, pointing out that the performance of their contract involved the use of judgment and discretion on their part; that there was no such right of control by the employer as to differentiate them from independent contractors and make them employés.

A succinct definition of independent contractor is to be found in 14 Ruling Case Law, p. 67, as follows: "An independent contractor is one, who, exercising an independent employment, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer except as to the result of his work." See, also, Storm v. Thompson, 185 Iowa, 309, 170 N. W. 403; Norton v. Day Coal Co., 192 Iowa, 160, 180 N. W. 905; Petrow & Giannou et al. v. Shewan, 108 Neb. 466, 187 N. W. 940; Jensen v. Barbour, 15 Mont. 582, 39 P. 906; Whitney & Starrette Co. v. O'Rourke, 172 Ill. 177, 50 N. E. 242.

Whether appellant is an independent contractor or a mere employé of the state of Oklahoma is to be determined by a construction of the contracts. The contract with relation to Pauls Valley Training School was introduced in evidence as a type of the contracts entered into. It is to be observed that under this contract there was no regular employment of appellant, no engagement for any specific period of time. He was not compelled to devote all his time to the work. There were no working hours. He was not on any pay roll. He did not receive a salary or wages; he could accept concurrent employment; his employment could not be terminated except upon failure to properly perform the contract, and then only upon certificate of such failure by the supervising architect; could demand arbitration in certain cases; could demand damages for delays; was liable for damages caused by delay; employed and paid his own men; selected and paid for the material used. As sustaining its theory that the relationship created was that of employer and employé, appellant contends that under the contract the state and its subdivisions possessed the right to control the manner and means of performance, especially because the contracts were cost-plus contracts; that as the state finally paid all the bills, it would naturally exercise supervision of the specific matter creating each bill; that appellant occupied a position identical with a superintendent; that the state could change the plans and could substitute different material, and through its architect suspend the work at any time it deemed advisable; that while ordinarily a bond was required by the state where contracts of this nature were made, appellant gave no bond.

In considering these provisions which are urged to show control on the part of the state inconsistent with the relation of independent contractor, it must be borne in mind that the work was done under written specifications and plans, and the state had the right under the contract through its architect to see that the results provided for by the said written specifications and plans should be reached and the contractual obligations fulfilled. The control reserved to the state architect was merely to see that the obligations of the contract were carried out. It was not a detailed control as to the manner and method of doing the work—it related only to what should be done, not to how it should be done. While the provision as to the right of the architect by order of the owner to order suspension of the work at any time he might desire is broad, we think, when taken in connection with all the other provisions of the contract, that it does not amount to the

retention of control as to the means or method by which the work should be carried out, and is not enough to destroy the independent character of the contractor. The will of the employer was represented by the contractor only as to results and not as to methods. By all proper legal tests the conclusion of the Board of Tax Appeals that appellant was an independent contractor and not an employé of the state was correct.

Another point urged by appellant is that he or his partnership constituted an agency by and through which the government of the state immediately and directly exercised its sovereign powers, and that the taxation provided by the Revenue Act of 1921 is a material and substantial interference with the action of such state agency. Of course, neither the federal government nor the state government can tax the means or instrumentalities employed by the other in carrying out its constitutional powers. Panhandle Oil Co. v. State of Mississippi ex rel. Knox, 277 U. S. 218, 48 S. Ct. 451, 72 L. Ed. 857, 56 A. L. R. 583, but the mere fact that one has a contract to perform some service to the federal or state government does not transform him into an instrumentality of government. In Metcalf & Eddy v. Mitchell, 269 U. S. 514, 522, 523, 46 S. Ct. 172, 174 (70 L. Ed. 384), the court said: "Just what instrumentalities of either a state or the federal government are exempt from taxation by the other cannot be stated in terms of universal application. But this court has repeatedly held that those agencies through which either government immediately and directly exercises its sovereign powers, are immune from the taxing power of the other. * * * When, however, the question is approached from the other end of the scale, it is apparent that not every person who uses his property or derives a profit, in his dealings with the government, may clothe himself with immunity from taxation on the theory that either he or his property is an instrumentality of government within the meaning of the rule." It would be a far-fetched doctrine to hold that every person, partnership, or corporation entering into a contract with a state government to do repair work on state buildings or buildings of political subdivisions of the state becomes an instrumentality of the state government and entitled to claim immunity from all federal taxation.

Appellant and his partnership were independent contractors and in no way instrumentalities or agencies of the state. The cases cited by appellant on this point are not applicable to the situation here presented.

It is further insisted that, even if appellant is not an employé or agency of the state, the tax of $5,593.12 on the profit of $34,654.97 derived from the contracts would be a "material and substantial" interference with the governmental functions of the state and its political subdivisions, and appellant relies on Metcalf & Eddy v. Mitchell, supra, and the statement of the court there, page 523 (46 S. Ct. 174), as follows: "But neither government may destroy the other nor curtail in any substantial manner the exercise of its powers. Hence the limitation upon the taxing power of each, so far as it affects the other, must receive a practical construction which permits both to function with the minimum interference each with the other; and that limitation cannot be so varied or extended as seriously to impair either the taxing power of the government imposing the tax * * * or the appropriate exercise of the functions of the government affected by it. * * * Nor are we to be understood as laying down any rule that taxation might not affect agencies of this character in such a manner as directly to interfere with the functions of government and thus be held to be void."

The national government cannot impose such taxes as necessarily interfere in a substantial way with the functions of a state government. The test is not the size of the tax, but the result thereof. The fact that appellant in making the contract did not understand that his income therefrom was subject to the federal income tax is not sufficient ground on which to base an argument that the tax was a substantial interference with the ability of complainant to carry out the obligations to the state provided in the contracts. The same question was before the Supreme Court in Metcalf & Eddy v. Mitchell, and it said with reference to the particular tax there in question and its relationship to the functions of the state government: "We do not find that it impairs in any substantial manner the ability of plaintiffs in error to discharge their obligations to the state or the ability of a state or its subdivisions to procure the services of private individuals to aid them in their undertakings." That language covers the situation here presented. We fail to see how this tax in any way impairs the efficiency or operation of the state government. We are unable to agree with any of the theories advanced by appellant to exempt him from the tax in question.

The judgment of the Board of Tax Appeals is therefore affirmed.