TATSUUMA KISEN GOSHI KAISHA (TATSUUMA S. S. CO., Limited), v. PORT OF SEATTLE et al.

(District Court, W. D. Washington, N. D.    September 8, 1916.)

No. 3170.

MUNICIPAL CORPORATIONS ⊙⟶752—LIABILITY FOR INJURY BY SERVANT—CONTRACT TO PERFORM WORK FOR ANOTHER.

A stevedoring company, having a contract to load a cargo of steel rails which were delivered on the pier in cars, contracted with the port of Seattle, which maintained an electric crane on the pier under charge of an engineer and assistants, who were its employés, to move the rails from the cars to the pier at a stated price per ton, and also to furnish the use of the crane and its attendants to deliver the rails on the vessel for an agreed price per hour. The operation of the crane was wholly in charge of the engineer. *Held*, that he did not become a servant of the stevedoring company, but remained the servant of the port, in the performance of the work, and that the port was liable for damages to the vessel caused by his negligent operation of the crane.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1583; Dec. Dig. ⊙⟶752.]

In Admiralty. Suit by the Tatsuuma Kisen Goshi Kaisha (Tatsuuma Steamship Company, Limited) against the Port of Seattle, a municipal

corporation, and the Griffiths & Sprague Stevedoring Company, Incorporated. Decree for libelant against the Port of Seattle.

Hughes, McMicken, Dovell & Ramsey, of Seattle, Wash., for libelant.

France & Helsell, of Seattle, Wash., for respondent port of Seattle.

Daniel B. Trefethen, of Seattle, Wash., for respondent Stevedoring Co.

NETERER, District Judge. Libelant alleges that the port of Seattle, for the purpose of loading and unloading cargo, operates an electric Gantry crane, a large and complicated mechanism, which is capable of being moved from place to place on the dock; that forming a part thereof is an apron, extending about 35 feet beyond the face of the pier, so constructed as to enable the vessels to pass alongside, or to allow the moving of the crane alongside a vessel moored at the pier, and is operated by electric power and machinery situated in a cage, and requiring technical skill in its operation; that the port of Seattle retains in its employ a skilled and competent electrical engineer for the operation of such crane, and also hook tenders and other necessary servants; that respondent Griffith & Sprague Stevedoring Company is engaged in the stevedoring business at the port of Seattle; that on the 30th of July, 1915, one of libelant's ships anchored alongside one of the docks of the port of Seattle, for the purpose of receiving a cargo of steel rails; that the respondent Stevedoring Company was under contract with the charterers of said vessel and engaged in loading the cargo; that in the course of the loading into hatch No. 2, "situated just abaft the foremast, it was necessary to obtain additional portions of said cargo by taking the same out of a freight car situated on the railway track on said dock a short distance sternward of said hold; that thereupon said operator moved said crane over the car, where the tackle was made fast by the hook tenders to a load of rails (consisting of about three rails), whereupon the operator took the load and moved the crane forward opposite the hatch and ran the load out on the apron, from which it was lowered to the hold; and after two or three of said loads had been lifted from said car and carried to said boat and stowed in said hold, the engineer of said crane, for his greater convenience in handling said freight, caused the cargo hook of said crane to be made fast to said freight car, and thereupon, while attempting to move said car forward to a point opposite said hold, neglected to raise said apron, and so carelessly and negligently operated said crane that said apron was caused to strike the foremast of said ship and thereby buckling and breaking said mast;" and that it was damaged in the sum of $2,919.98, and states it is unable to state which of the respondents is liable, and asks that process issue, the parties be cited to appear, and that the court decree the payment of damages as law and justice shall direct.

The respondents have appeared and answered, each denying liability; the port of Seattle claiming that the stevedoring company is liable, and vice versa.

The testimony shows that the stevedoring company had a contract with the libelant to load a cargo of steel rails from the cars of the railway company upon the vessel, and that the stevedoring company made a contract with the port of Seattle to unload the rails from the car to a suitable place for loading them into the vessel, for the sum of 12½ cents per ton, and a further agreement to furnish the use of the Gantry crane, together with the engineer for its operation, and two hook tenders, being equipment for the operation of such crane, at the agreed price of $2.25 per hour for loading from the dock into the vessel. It is also shown by the evidence that the rails were loaded into hatch No. 2 of the vessel, and when the said hatch was nearly filled it became necessary to take some rails from a freight car situated near the vessel, from which the rails had not been removed, and to obtain the rails it became necessary to move the crane along the track upon which it operates to the car, obtain the rails, and move back to a suitable place opposite hatch No. 2. After two or three loads had thus been obtained, the engineer and hook tenders concluded it would be advisable to move the car from its position to a place opposite the hatch, and take the rails from the car and lift them to the hatch without moving the crane along the track. The crane was thereupon moved along the track to the car, and by use of a lever or "shifting stick," one end of which was placed against the car and the other against the crane, the car was moved by the crane 12 or 15 feet beyond the place where it should have been taken, and the apron above referred to, not being raised, was caused to strike the foremast of the ship, causing the damage.

The superintendent in charge of the dock at the time testified that in taking the rails from the dock the work and operation of the crane was under the direct supervision of the engineer, and this responsibility continued until the loaded sling reached the vessel, when the orders were given by the supercargo, or man in charge of the hatch. It is also shown that the engineer and men were paid by the port of Seattle, and that the stevedoring company had no control of the men, except as it might operate through the port of Seattle. All the work in loading was done by employés of the stevedoring company, except work on the dock and the operation of the crane. The question to be determined is whether the engineer was a servant of the port of Seattle or of the stevedoring company, as upon this depends the liability; the master being responsible for the negligent acts of the servant.

In order to relieve the port of Seattle from liability, it must appear that the relation of master and servant, which was established, had been, for the time, suspended, and a new relation created between the stevedoring company and the engineer. It would seem from the evidence that this change is not established. The port of Seattle, it would seem, furnished the work for an agreed price, rather than the men and the appliances. The relation between the engineer and the port at no time changed. The stevedoring company at no time acquired any supervisory authority over the engineer other than mere suggestions as to details or the necessary co-operation with relation

to the taking of the rails from the dock and stowing them in the hold of the vessel. One who agrees to furnish the completed work through servants over whom he retains control is responsible for their negligence in the conduct of the work, though it is done for the ultimate benefit of another, and the determining factor is usually the power to control and direct the servants in the performance of the work. I think it is established beyond question that the performance of the work and the operation of the crane with relation to rails upon the dock and until they had reached the vessel was under the direction of the engineer. The manner of the work on the dock being under the control of the engineer, and the act complained of having transpired while in the conduct of work within his exclusive province, the liability is that of the port of Seattle.

This view is fully sustained by Standard Oil Co. v. Anderson, 212 U. S. 215, 29 Sup. Ct. 252, 53 L. Ed. 480. George A. Fuller Co. v. McCloskey, 228 U. S. 194, 33 Sup. Ct. 471, 57 L. Ed. 795 is to the same effect, as is also New Orleans-Belize S. S. Co. v. United States, 239 U. S. 202, 36 Sup. Ct. 76, 60 L. Ed. 227, and C., R. I. & P. Ry. Co. v. Bond, Adm'r, 240 U. S. 449, 36 Sup. Ct. 403, 60 L. Ed. 735.