## ISBELL PORTER CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 150.

Circuit Court of Appeals, Second Circuit.

April 7, 1930.

Charles P. Hamel, Lee I. Park, and John Enrietto, all of Washington, D. C. (Earl B. Barnes, of New York City, of counsel), for petitioner-appellant.

George A. Youngquist, Asst. Atty. Gen., Sewall Key and Andrew D. Sharpe, Sp. Assts. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and R. N. Shaw, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The question raised by this appeal is whether certain drawings belonging to the taxpayer should be treated as part of invested capital in calculating the excess profits tax for 1919.

The business of the taxpayer was the manufacture and sale of machinery and apparatus for producing and purifying gas. In the course of this business it made many draw-

ings, (1) for work in process attributable to a particular job; (2) standard model drawings, the object of which was to bring apparatus up to date to meet conditions from year to year and from month to month; (3) design drawings, which assemble the various types and classes of apparatus into a complete gas plant.

Drawings of the first class are designed for current business, and they are charged to the current business as part of the cost of the job. They are not involved here because it is not sought to include them in invested capital. The standard model drawings referred to in class 2 are not designed for any work for which there are orders or probable orders on hand, but are made because the magnitude of the various pieces of apparatus makes it impracticable to use models. These drawings are used as stock in trade, and are displayed to customers as being the drawings of a piece of apparatus that will accomplish a particular result. They are used to find an apparatus suitable for meeting the particular requirements of a customer, and as the basis of various units entering into a complete gas plant, and in making bids on prospective work and installation. The design drawings of class 3 represent various units of apparatus assembled into a complete installation, and require considerable engineering work in determining the capacities, stresses, and various other items entering into an engineering unit.

The gas industry has developed gradually in such a way that apparatus used at the present time represents an outgrowth of earlier methods and designs, and, as a result, drawings made by the taxpayer many years prior to the year involved are still useful and are used in its business. The drawings represent the arrangement and design of apparatus for gas production, and are used not only in aid of construction of apparatus as the art progresses, but for locating trouble in apparatus already in use.

The cost of standard model drawings (class 2) and design drawings (class 3) has not been charged to customers in the cost of a particular job, but has been included in the general expense of the taxpayer for the years in which the particular drawings were made. The cost for drafting, tracing, and engineering in respect to the standard model drawings was, $43,969, and in respect to the design drawings was $44,908. The foregoing costs, however, included no allowance for overhead expenses, bonuses paid to employees, and certain increases in salaries dur-

ing the period 1904 to 1917, which, in fact, amounted to not less than 50 per cent. of the above costs for engineering, drafting, and tracing, making an aggregate of $133,309.50. This sum the taxpayer has sought to have allowed as a part of invested capital of the year 1919 for which the excess profit tax had to be determined. No allowance as invested capital was made of any part of this aggregate either by the Commissioner or by the Board of Tax Appeals.

Hay, the chief engineer of the taxpayer, testified that he could not point out from the books in detail expenditures that could be allocated to a particular drawing, but said that the cost of the drawings was charged into the general expense account. He admitted that designs were modified from time to time, but said that the essential features of the original designs were still in the apparatus, and that the company could not get on without them.

It is clear from the evidence, as well as from the findings of the Board, that the drawings in question are still to a greater or less extent valuable and used in the business. But the Board held that no basis was furnished for showing depreciation or obsolescence, and the entire sum sought to be included in invested capital was disallowed. The Board said that, "* * * if the capitalization theory contended for is sound, a concern with a business history of more than fifty years should be able to furnish a basis for exhaustion of these drawings which would prevent the building up of an account which neither good accounting practice would sanction, nor sound business policy approve."

We think that, in spite of testimony that the drawings in question were still useful and used, the Board was justified in regarding the cost of the drawings as subject to some debit for obsolescence. There was testimony to the contrary, but it may be regarded as hardly likely that drawings for apparatus, which in some cases were only useful as forming a basis for new apparatus in which modifications of design had to be made, would be as valuable as when made and as when substantially representative of current designs.

But it is one thing not to allow as invested capital the whole amount claimed and another to reject the entire sum. Treasury Regulations 45 provide:

"Art. 168. *Depreciation of Drawings and Models.*—A taxpayer who has incurred expenses in his business for designs, drawings, patterns, models, or work of an experimental nature calculated to result in improvement

434

of his facilities or his product, may at his option deduct such expenses from gross income for the taxable year in which they are incurred or treat such articles as a capital asset to the extent of the amount so expended. In the latter case, if the period of usefulness of any such asset may be estimated from experience with reasonable accuracy, it may be the subject of depreciation allowances spread over such estimated period of usefulness. The facts must be fully shown in the return or prior thereto to the satisfaction of the Commissioner. * * *"

It may be that the taxpayer should have established an account for obsolescence. On the other hand, it contends that there was no obsolescence, and in such circumstances it was justified in attempting in good faith to establish its position. It cannot be said that it should lose the benefit of having any of the cost of the drawings in question included in invested capital because it may have erred in claiming too much.

The cost of the drawings in question was according to the findings of the Board, and the undisputed evidence a proper figure of capital expenditure. The erroneous charge of this cost to current expenses on the books of the taxpayer should be restored in determining the invested capital of the taxpayer for profits tax liability. Against this, any debits for obsolescence which may be proper should be made.

██ The entries on the taxpayer's books of charges to current expenses were not conclusive. The decision of the Board of Tax Appeals must rest upon the actual facts. Doyle v. Mitchell Bros. Co., 247 U. S. page 187, 38 S. Ct. 467, 62 L. Ed. 1054; Reinschmidt v. Commissioner (C. C. A.) 28 F. (2d) 660; United Profit Sharing Corp. v. United States, 66 Ct. Cl. at page 182. The testimony of the taxpayer's witnesses and the findings of the Board show that the theory of bookkeeping was erroneous. Hoe & Co. v. Commissioner (C. C. A.) 30 F. (2d) 630, 634. The only question is the amount of depreciation, if any, which should be allowed. In Cohan v. Commissioner of Internal Revenue (C. C. A.) 39 F. (2d) 540, the Board of Tax Appeals had rejected certain items of expense in toto on the ground that the exact amount had not been established, though there was proof that certain expenses had been incurred, but this court remanded, with direction to make such allowance as the facts warranted, saying, "there was obviously some basis for computation, if necessary by drawing upon the Board's personal estimates of the minimum of such expenses."

While the taxpayer had the burden of showing that its assessment was erroneous, and it may be that it was in position to furnish more precise evidence, yet it certainly established that the drawings had cost $133,-309.50 and that a part of such sum was, in any event, attributable to "invested capital." The situation is different from that in Botany Mills v. United States, 278 U. S. 282, 49 S. Ct. 129, 73 L. Ed. 379, where the proof did not show that any part of a disputed item was improperly disallowed. The same situation existed in Reinecke v. Spalding, 280 U. S. at page 233, 50 S. Ct. 96, 74 L. Ed. —— where there was a complete lack of proof on the part of the taxpayer.

The decision of the Board of Tax Appeals is reversed, and the proceeding is remanded, with direction to restore to invested capital for the year 1919 the cost of the drawings as already established, after deducting therefrom any charge for obsolescence and depreciation which may be just and right.