### RUSSELL et al. v. COMMISSIONER OF INTERNAL REVENUE.
#### No. 2463.

Circuit Court of Appeals, First Circuit.
Nov. 26, 1930.

Donald Horne, of New York City, for petitioners.

A. H. Conner, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and C. M. Charest, General Counsel, and Percy S. Crewe, Special Attorney, Bureau of Internal Revenue, both of Washington, D. C., on the brief), for Commissioner of Internal Revenue.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

ANDERSON, Circuit Judge.

These four appeals from the Board of Tax Appeals from deficiency assessments in income taxes for 1920, were consolidated for hearing and decision by the board. In 1920 the appellants were partners, carrying on a wholesale and retail hardware business in Holyoke, Mass., under the name of J. Russell & Company. Prior to January 1, 1920, the business had been carried on by the senior partner, Henry L. Russell, individually. On January 1, 1920, he took in his three sons, Stuart A., Newton H., and Robert H., as partners. The partnership continued until

March 1, 1923, when the business was incorporated. About 75 per cent. of the business was wholesale, and about 90 per cent. of the wholesale sales were made on credit.

The income tax return for the year 1920 of this firm was as follows:

| | | |
|---|---|---|
| Gross sales, less returns and allowances ........ | $1,060,540 49 | |
| Less cost of goods, exclusive of expenses, repairs, etc. .............. | 857,790 28 | $202,750 21 |
| Taxable interest from all other sources ........ | | 500 31 |
| Total of items 1 to 11...... | | $203,250 52 |

| | |
|---|---|
| Ordinary & necessary expenses, | $128,073 52 |
| Exhaustion, wear & tear....... | 10,813 96 |
| Depletion .................................... | 138,887 48 |
| Net income for accounting period to be accounted for by members............. | 64,363 04 |

Schedule C—Members' shares of Income, etc.

| | No. Shares. | Other Income. |
|---|---|---|
| Henry L. Russell—Holyoke, Mass. | 22/40 | $35,399 66 |
| Newton H. Russell—So. Hadley, Mass. | 6/40 | 9,654 46 |
| Robert H. Russell—Holyoke, Mass. | 6/40 | 9,654 46 |
| Stuart A. Russell—Holyoke, Mass. | 6/40 | 9,654 46 |
| Total | | $64,363 04 |

This shows a net distributive profit of about 6.4 per cent. on sales of about $1,000,-000.

The commissioner assessed deficiences as follows:

| | 1920 |
|---|---|
| Henry L. Russell ............................ | $34,156 59 |
| Stuart A. Russell............................ | 2,739 47 |
| Robert H. Russell............................ | 2,749 31 |
| Newton H. Russell............................ | 2,714 32 |
| A total of................................ | $42,359 69 |

This result was reached by increasing the net profit from $65,363.04 to $179,820.73, thus making a net, distributive profit of over 17 per cent. on the sales. Such a remarkable scale of profits is alone sufficient to ground strong suspicion of error.

The firm's return was made on the basis of cash receipts and disbursements. This was authorized by section 212(b) of the Revenue Act of 1918, c. 18, 40 Stat. 1057, 1064:

"Sec. 212 * * * (b) The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made upon such basis and in such manner as in the opinion of the Commissioner does clearly reflect the income."

But the commissioner's rejection of a return made by the taxpayers, in accordance with its regular method of accounting, is subject to review, both by the Board of Tax Appeals and by the court. Oesterlein Machine Co.'s Appeal, 1 B. T. A. 159. An arbitrary adoption of a substitute method of computing a tax, which does not in fact "clearly reflect the income" of the taxpayers, cannot be sustained. The commissioner's discretion must be exercised reasonably, on sound grounds.

The commissioner rejected both the return and the method, and reached his extraordinary results as to deficiencies by undertaking to apply the accrual method. The gist of the opinion of the Board of Tax Appeals is that the income of this partnership cannot be properly shown on a cash receipt and disbursement basis, and that the appellants failed to show any errors in the commissioner's computation under the accrual method. This result cannot be sustained.

The accrual system requires inventory both at the beginning and at the end of the tax period. This firm took no inventory of its merchandise at any time during 1920. The business was divided into twenty-five departments; a twenty-sixth (No. 21) consisted only of consigned goods. These departments were of very unequal size. The firm had no general system of purchase and sales records. But it had what was called "subsidiary sales and purchase records," made by departments. The inventory of each department was supposed to be started by a stocktaking in that department, and that each month the cost of purchases was added to that department and the sales therefrom subtracted at the end of each month. This method purported to furnish what is called a "perpetual inventory." But, in practice, it was found to be so grossly inaccurate as to be entirely unreliable. Tests made by physical inventories, at various times during the life or at the end of the partnership, showed that the records thus made were in most instances much higher than the actual stock on hand. Whether these discrepancies were due to defects in the system or in the bookkeeping, or because of goods lost or stolen, does not clearly appear in the confusing record. But such so-called "perpetual inventories," even if they had been approximately correct and reasonably reliable (as they were not), purport to show merely the cost, not the market value of the goods.

It is important to note that the year in question was 1920. It is matter of common economic knowledge, fully supported by the evidence in this case, that at the beginning of that year prices were high; that in the latter part of that year all commodity prices slumped off tremendously. The deflation in late 1920 and in 1921 was probably the most drastic drop in merchandise prices in a generation. This partnership carried a stock of from $200,000 to $300,000, at cost prices. It is hard to believe that, if reasonably accurate inventories at the beginning and end of the year 1920 had been made, the concern would have shown any substantial, net profit, on the accrual method.

The Board of Tax Appeals found that the partnership was in existence prior to 1920. This is plainly wrong. The evidence is conclusive that there was no such partnership until January 1, 1920. The Board of Tax Appeals also found that "no evidence was submitted to show the commissioner had not properly computed net income on the accrual theory." This also is plainly wrong.

The accrual system which the commissioner purported to use in assessing the deficiency taxes (affirmed by the Board of Tax Appeals) involves a comparison between inventories taken at the beginning and at the end of the tax year. The main items of an inventory of such a concern as this partnership are: (1) Cash, ordinarily putting under that head bank deposits; (2) bills and/or notes receivable; (3) stock on hand. Two of these three items require valuation. Bills and notes receivable are rarely all good. The stock on hand, of course, requires valuation. The liability side has corresponding items. Deducting the liabilities from the assets will furnish the value at the beginning of the year. The balance sheet should be made in like fashion at the end of the year. To the difference obtained by comparison of the two balance sheets there should be added any withdrawals on account of the distributive shares of the partners during the year; the result would be, substantially, the taxable income. Minor items on both sides of the balance sheets may vary this result slightly.

Into this record the petitioners put evidence as to the method pursued by the commissioner. From that evidence, it appears that the amount of cash of the firm, neither at the beginning nor at the end of 1920, was shown or given any consideration; that no valuation of the bills receivable at either date was made; that what the commissioner did was to take the stock on hand on January 1, 1920, at a valuation alleged to have been agreed to at the end of 1919; and on December 31, 1920, to adjust the stock (as was claimed) as shown by the "perpetual inventories." This was no adequate and sound use of the accrual method.

Passing other errors, even if the results thus reached had not been on their face hardly less than absurd, the method could not, as matter of law, be affirmed. The cash, both at the beginning and at the end of 1920, is a vital element in determining an inventory of the business; so are the bills and notes receivable, taken at fair value only, especially in such times as merchants faced at the end of 1920. The bills receivable on January 31, 1920 (a month after the year began), are found to be $125,789.46. Eleven months later, on December 31, 1920, they were $127,-465.85. Their real value nowhere appears on either date.

The firm at the beginning of the partnership on January 1, 1920 had on its books a merchandise inventory of $228,609.22. The exact origin of that inventory is not disclosed in the evidence. But the fact that it was adopted as the basis for the partnership between the father and his three sons furnishes a sound business reason for accepting it, until it is shown to be wrong. The commissioner, however, diminished it, although prices were then, as already said, fairly high, to $213,125.57. The only ground for doing this disclosed in the record is the statement made by an internal revenue agent that this was the adjusted closing inventory for the calendar year 1919, which inventory was accepted as approximately correct and the resulting deficiency paid. As already noted, the tax for 1919 was the individual tax of Henry L. Russell. On what basis it was computed does not appear. An alleged admission by the senior partner that, for the purpose of determining his tax for 1919, the inventory of merchandise should be taken at $213,125.57, clearly has no binding effect on the new partners, who obviously agreed that as of January 1, when their rights as partners began, the stock on hand was worth $228,609.22. Besides, Henry Russell might have had many reasons for accepting, without further trouble, the assessment of his tax for 1919, whether the final valuation put upon the merchandise on hand at the end of the year was correct or incorrect. His failure to contest that valuation had no binding effect on him, much less upon his new partners for the year 1920.

We find no scintilla of evidence in the record that the commissioner made any real

inventory of merchandise as of January 1, 1920. Although the appellants offered a considerable amount of evidence "solely for the purpose of showing what the commissioner did," there is distinct evidence from the petitioner R. H. Russell that the firm had no records from which such a valuation as $213,125.57 could, on January 1, be obtained.

The commissioner also made a closing inventory of merchandise as of December 31, 1920, of $292,272.96. The board finds that "these figures were reached by adjusting the partial sales record with the partial inventories." But, as pointed out, the so-called partial inventories were taken purely at cost, and besides were shown to be grossly inaccurate and entirely unreliable.

The evidence shows that perhaps a month or two after January 1, 1921, the firm took a physical inventory of eight departments, covering less than one-third of the total, estimated, stock. The evidence is clear that no such valuation as $292,272.96, either at cost or at value, could be found in the books or records of the partnership.

The commissioner himself put into the record evidence that, on the basis of the so-called perpetual inventory, the amount of stock on hand was then only $289,240.05. Although prices were then greatly depressed, he made no valuation on the basis of market value, yet—again from an affidavit of the petitioners put in evidence by the commissioner—it appeared that in only ten departments the market value was $34,562.01 less than the cost figures, leaving an adjusted inventory of only $254,667.59. This was on the assumption that a physical inventory would show the same amount of goods on hand as shown by the subsidiary records—an assumption entirely unwarranted by the evidence in the case.

The general result is that the record shows that the commissioner did not use, in any legal and proper way, the accrual method.

While there is a presumption that the commissioner's findings are correct, Avery v. Commissioner (C. C. A.) 22 F.(2d) 6, 55 A. L. R. 1277, when it appears, as in this record it does appear, that the methods pursued by the commissioner were mathematically and legally erroneous, that presumption no longer avails. New York Life Ins. Co. v. Ross (C. C. A.) 30 F.(2d) 80, 82.

While appeals from decisions by the Board of Tax Appeals are limited to questions of law, Blair v. Curran (C. C. A.) 24 F.(2d) 390, such questions are presented when findings of the board are without any support whatever or are conclusively shown by the evidence to be wrong. R. I. Hospital Trust Co. v. Commissioner (C. C. A.) 29 F. (2d) 339, 341, and cases cited.

Under the statute (26 USCA § 1226(b), the procedure powers of this court are:

"Upon such review, such courts shall have power to affirm or, if the decision of the board is not in accordance with law, to modify or reverse the decision of the board, with or without remanding the case for a rehearing, as justice may require."

When, as is shown by the record in this case, the merchandise is of very much less value at the end of the tax year than at the beginning, the cash receipts and disbursements method obviously exaggerates the profits shown for the year. It is therefore certain that the tax shown in the petitioners' return is at least as large as a tax assessable under any sound application of the accrual method.

Under these circumstances justice does not require remanding to the board for further proceedings.

The decisions of the Board of Tax Appeals are reversed.