## UNDERWOOD v. COMMISSIONER OF INTERNAL REVENUE.

### No. 3208.

Circuit Court of Appeals, Fourth Circuit.

Jan. 12, 1932.

Rehearing Denied March 7, 1932.

J. G. Korner, Jr., of Washington, D. C.,
for petitioner.

Wm. Cutler Thompson, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Harold Allen and L. H. Rushbrook, Sp. Attys., Bureau of Internal Revenue, all of Washington, D. C., on·the brief), for respondent.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

Harry A. Underwood, a resident of North Carolina, appealed to the United States Board of Tax Appeals from a determination and order of the Commissioner of Internal Revenue in which deficiencies in income taxes of $4,112.49 and $1,199.46, for the fiscal years ending February 29, 1924, and February 28, 1925, respectively, were assessed. The determination required the taxpayer to include in his taxable income the sum of $68,080.60, received by him in the first, and the sum of $44,-666.15, received by him in the second of these years, for services rendered and supplied by him as engineer and supervising architect in connection with the construction of state buildings for hospitals, schools, and other public institutions of North Carolina. His contention and complaint was that the moneys in question were received by him as compensation for personal services as an employee of the state, and as such, were exempt from federal income taxes. The Board of Tax Appeals affirmed the Commissioner's action, holding that Underwood was not an employee but an independent contractor; and the case was brought to this court by a petition for review.

The Revenue Act of 1926 by section 1211, 44 Stat. 9, 130 (26 USCA § 1065b), provides retroactively for the exemption from income taxes of compensation received by state officers and employees in the following terms: "Any taxes imposed by the Revenue Act of 1924 or prior Revenue Acts upon any individual in respect of amounts received by him as compensation for personal services as an officer or employee of any state or political subdivision thereof (except to the extent that such compensation is paid by the United States Government directly or indirectly), shall, subject to the statutory period of limitations properly applicable thereto, be abated, credited, or refunded."

Formerly the laws of North Carolina provided for a state building· commission to co-ordinate and carry on the public building work of the state, and also for a state architect, to be appointed by the state building commission. See Public Laws of North Carolina of 1919, ch. 303; Consolidated Statutes of North Carolina, §§ 7487 to 7494. In 1919 Underwood was employed as an assistant state architect on a salary and served in that capacity until March 9, 1921, when changes were made in the law by the Legislature. The statutes providing for the state building commission and the state architect were repealed; and it was provided that each of certain state institutions should come under the control and management of a board of directors or trustees, to be appointed by the Governor; that each board should be held responsible for the management of the institution committed to its care, and for the disbursements of appropriations for the maintenance and permanent enlargement and repair thereof; and that each board should select and appoint from its members a building committee, specially charged with the duty of the supervision of the buildings to be built or repaired from appropriations made to the institution by the General Assembly of the state. See Public Laws of North Carolina of 1921, chs. 183 and 213; North Carolina Code of 1931, §§ 6159 (a) to 6159 (c), and sections 7487–7494.

As the result of these legislative provisions, the several boards appointed from their membership a joint building committee, and on April 26, 1921, this body entered into a contract with Underwood, as engineer and architect, to superintend and direct the construction work at certain state institutions, devoting his entire time to the employment, for a salary of $500 per month together with traveling, office, and clerical expenses. The contract provided that either party might abrogate it upon giving the other party sixty days' notice. The findings of the Board of Tax Appeals show that Underwood entered into the performance of the contract of employment as agreed, devoted his entire time to the job, and did the work for four or five institutions under the direction, control, and supervision of the building committee. He employed and discharged the members of his office force; their number and identity was left to his discretion. He kept accounts of his expenses, and at regular intervals submitted statements for his salary and expenses, and received warrants upon the state treasurer therefor, which were paid out of the legislative appropriations. The payments to him were charged by the state authorities in equal amounts against the appropriations for the institutions concerned.

Early in 1923, this plan was changed because it was thought unfair to the institutions whose building programs were comparatively small. It was therefore agreed that thereafter the cost and expenses of the architect's employment should be divided among the various institutions served in the proportions that their several legislative appropriations bore to the sum total of the appropriations. Another change, and one more important to the decision of this case, was brought about by the fact that a larger building program was undertaken by the state, which entailed more onerous services than formerly on the part of the architect. The number of institutions served was increased to twelve. It was agreed that in lieu of the salary of $500, and expenses, he should be paid a percentage on the moneys expended, ranging from 1½ to 6 per cent., depending upon the character and amount of the architectural and engineering services to be performed.

Under the new arrangement, the architect continued to devote his entire time to the work of the state, under the direction of the joint building committee, but he maintained an office at his own expense and continued to employ and discharge his assistants and employees at will as the necessities of the work required. He testified at the trial that he met with the boards of the various institutions, discussed plans with them, and prepared preliminary drawings for their final approval. He also said: "I received in 1924 $68,080.60; I received in 1925, $44,666.15. Out of those amounts I was to pay office rent, all expenses, including clerk hire, and stationery and office supplies, and all expenses covering the running of an architect's office. In 1924 and 1925 I would say I had ten or twelve employees. They were architects, draftsmen, engineers, inspectors and superintendents."

It is obvious that whether his assistants were his employees, or employees of the state, before 1923, they were his employees after the new arrangement was made. The chairman of the joint building committee testified that the architect was subject at all times to the orders and directions of the joint building committee, not only as to what should be done, but also as to the manner in which it should be done. Passing upon the testimony, the Board of Tax Appeals found that the architect's full time and services were at all times subject to the orders and directions of the joint building committee, but they reached the conclusion that he was neverthe-

less an independent contractor and not an employee whose compensation was exempt from income taxes. The Board said:

"Although the petitioner under his contract was required to devote and did devote his entire time and attention to the performance of his contracts with the State of North Carolina, those services were such as are performed ordinarily by an architect and engineer. He drew his plans in accordance with the requirements or suggestions of his employers and he complied with their wishes with respect to the planning of the buildings and the erection of them. He did, however, maintain his own office, employ his own assistants, and bore the expense of their employment. * * *

"The building program of the state was extensive and the state required the petitioner to devote his entire time to this work until the same was completed. In the performance of the work he was to comply with the instructions and directions of his employers. But he was to bring about these results through his own methods and instrumentalities. This, we think, stamps the petitioner as an independent contractor with the State of North Carolina, rather than as an employee."

These findings of the Board are attacked on behalf of the taxpayer as at variance with the express testimony of the committee's chairman that the committee directed not only the result to be obtained but the method to be employed by the architect. He himself did not go so far in his testimony; and it is not likely that the chairman intended his statement to be taken literally as the equivalent of the language so often used by the courts in discussing the question of independent contractors, as for instance, in Singer Manufacturing Co. v. Rahn, 132 U. S. 518, where the court said, page 523, 10 S. Ct. 175, 176, 33 L. Ed. 440: "The relation of master and servant exists whenever the employer retains the right to direct the manner in which the business shall be done, as well as the result to be accomplished, or, in other words, 'not only what shall be done, but how it shall be done.' Railroad Co. v. Hanning, 15 Wall. 649, 656 [21 L. Ed. 220]."

There is no testimony in the record to indicate that the members of the committee were possessed of technical architectural and engineering skill; and it is a fair inference under the circumstances that the work which the architect was employed to do was beyond their capacity to direct, either in method or in detail. Their control was necessarily confined to the determination of the kind and

character of the building construction and repairs to be undertaken. The architectural and engineering work necessary to effectuate their purposes was done by Underwood and a staff of architects and engineers who were under his personal direction and control; and were completely free from interference by the committee. Hence we think that there was substantial evidence in the record to support the findings of the Board of Tax Appeals, and they are therefore binding on us. Anchor v. Commissioner (C. C. A.) 42 F.(2d) 99; Wright v. Commissioner (C. C. A.) 50 F.(2d) 727.

■ The criterion of an independent contractor is a certain liberty of action and freedom from control by the employer or contractee. But it is not easy to define in precise terms the limits of the freedom which characterizes the independent contractor, or the kind of control, on the other hand, which signifies an employee or servant. The Supreme Court of North Carolina, in Harmon v. Ferguson Contracting Co., 159 N. C. 22, 74 S. E. 632, 634, made the following statement: "Generally stated, an independent contractor is one who in the exercise of an independent employment contracts to do a piece of work according to his own methods, without being subject to his employer's control, except as to the results of the work." See, also, Casement v. Brown, 148 U. S. 615, 13 S. Ct. 672, 37 L. Ed. 582; Tatsuuma Kisen Goshi Kaisha v. Port of Seattle (D. C.) 237 F. 289; 33 Corpus Juris, 1315-6. It has been suggested that a more simple formula or definition of an independent contractor "is a person employed to perform work on the terms that he is to be free from the control of the employer as respects the manner in which the details of the work are to be executed." 19 A. L. R. 235, note.

■ In short, it is very generally held that the right to control the manner of doing the work contracted for is the principal consideration in determining whether one is employed as an independent contractor or a servant. Various factors which shed light on the question were discussed in recent cases when it became necessary to decide whether a taxpayer was an independent contractor or a state employee entitled to exemption from income tax. From these discussions, it appears that the services of an employee or servant, as distinguished from those of a contractor, are usually characterized by regularity and continuity of work for a fixed period or one of indefinite duration, as contrasted with employment to do a single act or a series of isolated acts; by compensation on a fixed salary rather than one regulated by the value or amount of the work; by full-time employment with exclusive control by the employer of the employee's time, or at least the right to have first call upon the employee's services. On the other hand, control by the contractor of the instrumentalities which he uses and of the subordinate employees who assist him, and payment by him of their salaries or wages, are circumstances indicating that freedom of action which characterizes an independent contractor.

Another circumstance, which is important, occurs where the services to be rendered involve professional skill or learning. Thus in the leading case of Metcalf & Eddy v. Mitchell, 269 U. S. 514, 521, 46 S. Ct. 172, 173, 70 L. Ed. 384, where the plaintiffs were employed as consulting engineers to advise states or subdivisions of states with reference to water supply and sewage disposal systems, the court, in holding that they were neither officers nor employees, said: "In each instance the performance of their contract involved the use of judgment and discretion on their part and they were required to use their best professional skill to bring about the desired result. This permitted to them liberty of action which excludes the idea that control or right of control by the employer which characterizes the relation of employer and employee and differentiates the employee or servant from the independent contractor. Chicago, Rock Island & Pacific Ry. Co. v. Bond, 240 U. S. 449, 456, 36 S. Ct. 403, 60 L. Ed. 735; Standard Oil Co. v. Anderson, 212 U. S. 215, 227, 29 S. Ct. 252, 53 L. Ed. 480." See also Frank H. Mesce v. U. S., 64 Ct. Cl. 481. Kreipke v. Commissioner (C. C. A.) 32 F.(2d) 594.

The possession of professional skill by the person employed is, however, not always sufficient in itself to constitute him an independent contractor. Thus in a number of recent cases the courts have been called on to decide whether or not lawyers employed to do legal work for state governments were state employees, whose compensation was exempt from federal taxation. It was held by this court in Burnet v. Livezey, 48 F.(2d) 159, that an attorney employed at a salary of $5,000 per year, as counsel for the public service commission of West Virginia, to give it legal advice and represent it in litigation in the courts, and also to represent the public in hearings before the commission, was a state employee, although he was not required to give up his private law practice so long as

it did not interfere with his public work, and had no definitely fixed working hours. It was thought that since he was not employed from time to time on specific pieces of work, and the amount of his compensation was not directly regulated by the value of his services, and the commission possessed the right to exercise control over the details of the work, there existed more than the ordinary relation of attorney and client, and sufficient control and guidance had been retained by the commission to bring him within the definition of an employee. On the other hand, it has been held in a number of cases that lawyers engaged upon state work were not state employees, since the measure of control was not sufficiently full. See Burnet v. McDonough (C. C. A.) 46 F.(2d) 944; Blair v. Byers (C. C. A.) 35 F.(2d) 326; Lucas v. Howard, 280 U. S. 526, 50 S. Ct. 87, 74 L. Ed. 593; Lucas v. Reed, 281 U. S. 699, 50 S. Ct. 352, 74 L. Ed. 1125.

There are a number of circumstances in the pending case which, taken alone, tend to show the relationship of employer and employee rather than that of independent contractor. The architect had no other employment; he was always at the command of the commission to perform such services as they might direct; his employment was continuous, regular, and of indefinite duration, to continue so long as the state wanted him, with the qualification, however, that the contract might be terminated by either party on sixty days' notice. But granting full weight to these considerations, we think that the other attendant circumstances were sufficient to constitute the architect an independent contractor. He was not merely engaged upon skilled professional work beyond the ability of his employers to control in detail, but he was in control of an office of twelve skilled employees whom he had the power to employ and discharge at will and whose activities were subject to his exclusive direction. His commissions were fixed at a figure sufficiently high to reimburse him for the expenses of his office; but nevertheless he determined what office expenditures should be made, and so long as he performed the work intrusted to him properly, he was entitled to retain for himself so much of the commissions as remained after the expenses of the office were met. We think that this substantial control, intrusted to him by the state authorities, was incompatible with the relationship of employer and employee, and constituted him an independent contractor.

Although the ruling of the Board of Tax Appeals was correct in regard to this disputed question, nevertheless, the case must be remanded for further proceedings in order that the correct amount of taxes payable may be ascertained. The case was tried below upon the assumption, in which both parties shared, that the only question for determination was whether the taxpayer was a state employee or an independent contractor. But this was not correct unless that question should be decided adversely to the Commissioner and he should be directed to exclude from the taxpayer's income the entire sums he received from the state of North Carolina. On the other hand, if it should be decided that the income from the state was taxable, it was still necessary to determine the deductions for ordinary and necessary expenses of the business to be allowed under the Revenue Act of 1924, § 214, 43 Stat. 269 (26 USCA § 955 and note).

It was obvious to the Board, from the evidence before it, that the sums of $68,080.60 and $44,666.15 for the years ending in February 1924 and 1925, respectively, represented gross and not net income. Indeed, the Board pointed out in its opinion that the commissions paid to the architect went to compensate him not only for his personal services, but also for the services rendered by the assistants in his office whose salaries he paid; and the Board used this fact to sustain its conclusion that the taxpayer did not come within the exemption granted by the statute to an individual in respect to amounts received by him as compensation for personal services as a state employee. Counsel for the Commissioner, in their brief in this court, emphasized the point, saying that the necessary office expenses and salaries of ten or twelve office employees, consisting of architects, engineers, draftsmen, and others, must have absorbed by far the greater part of the amounts which the taxpayer received.

Notwithstanding this state of affairs, the Commissioner failed to make any allowance for the taxpayer's expenses and assessed the tax on the gross receipts; and this action was affirmed by the Board. The only explanation offered in this court is that the evidence before the Board did not disclose the amount of the expenses incurred; that the burden of proof in a case of this sort is upon the taxpayer and therefore the Board was obliged to affirm the Commissioner's determination. It is settled that the taxpayer has the burden of proof by a number of decisions of the Supreme Court. Burnet v. Houston, 283 U. S. 223, 51 S. Ct. 413, 75 L. Ed. 991; Botany Mills v. U. S., 278 U. S. 282, 49 S. Ct. 129, 73 L. Ed. 379; Reinecke

v. Spalding, 280 U. S. 227, 50 S. Ct. 96, 74 L. Ed. 385; Niles Bement Pond Co. v. U. S., 281 U. S. 357, 361, 50 S. Ct. 251, 74 L. Ed. 901. But we do not think that this rule so restricts the powers of the Board as to require it to countenance an obvious injustice. "The Board of Tax Appeals is not a court. It is an executive or administrative board." Old Colony Trust Co. v. Commissioner, 279 U. S. 716, 725, 49 S. Ct. 499, 502, 73 L. Ed. 918. "An examination of the sections creating the board and investing it with power can leave no doubt that they were intended to confer upon it appellate powers which are judicial in character. Not only is it required by section 900 (e) [26 USCA § 1216 note] to hear and determine appeals taken under section 274 [26 USCA § 1048 note et seq.], which in terms allows an appeal in every case where a deficiency is found by the Commissioner, but it is empowered to administer oaths, and to compel the attendance of witnesses and the production of documents and records. It may investigate anew the issues between the government and the taxpayer, and upon the determination of the appeal it may affirm, set aside, or modify the findings and decision of the commissioner." Blair v. Oesterlein Co., 275 U. S. 220 at page 227, 48 S. Ct. 87, 89, 72 L. Ed. 249. See, also, 26 U. S. C. §§ 1216 to 1220 (26 USCA §§ 1216–1220).

The Board had ample power under the statute to require the production of additional evidence when it became clear that it could not do justice to the taxpayer by reason of the deficiencies in the record before it. It was unquestionably incumbent upon the taxpayer to offer the testimony in the first instance, and cases arise where the moving party must suffer the consequences of his own neglect. Here, however, the Board's own opinion showed that the Commissioner's action was wrong in a material respect. The information to correct the mistake was readily obtainable from the same source as that from which the gross receipts of the taxpayer were ascertained. Under these circumstances, the Board should have deferred its decision until testimony showing the amount of the deductions to which the taxpayer was entitled was introduced, and then have redetermined the deficiency. The decision of the Board will therefore be reversed and the case remanded in order that the course indicated may be followed. This action, we think, is authorized by the powers vested in this court by the Revenue Act of 1926, § 1003, 44 Stat. 110, 26 U. S. C. 1226 (26 USCA § 1226), where it is provided that the Circuit Court of Appeals shall have power to modify or reverse a decision of the Board, if not in accordance with the law, with or without remanding the case for a rehearing, as justice may require. In a number of instances, Circuit Courts of Appeals have remanded cases for rehearing when it seemed necessary in order to do justice to the parties. It does not appear in these cases that new evidence was available; but in the instant case the evidence is known to exist and it would be an abuse of discretion to decline to receive it. See Cohan v. Commissioner (C. C. A.) 39 F.(2d) 540, 543; Citrus Soap Co. v. Lucas (C. C. A.) 42 F.(2d) 372, 373; Isbell Porter v Commissioner (C. C. A.) 40 F.(2d) 432; Independent Ice & Cold Storage Co. v. Commissioner (C. C. A.) 50 F.(2d) 31; Russell v. Commissioner (C. C. A.) 45 F.(2d) 100. In addition, there is the well-established rule that an appellate court has the power, without determining and disposing of a case, to remand it to the lower court for further proceedings if the case has been tried on a wrong theory, or the record is not in condition for the appellate court to decide the question presented with justice to all parties concerned. See Finefrock v. Kenova Mine Car Co. (C. C. A.) 22 F.(2d) 627, 634, and cases cited; also Seufert Bros. Co. v. Lucas (C. C. A.) 44 F.(2d) 528.

Reversed and remanded.

### On Petition for Rehearing.

Since the opinion was handed down in this case, the Commissioner of Internal Revenue has filed a petition for rehearing, claiming: (1) That this court is without power to remand the case for further hearing, as directed in the opinion; and (2) that there is no occasion for such remand because the record indicates that the taxes imposed upon Underwood were not based upon a gross income of $68,080.60, for the year ending February 29, 1924, and $44,666.15, for the year ending February 28, 1925, but upon amounts considerably less than those named in the respective years. So far as the first point is concerned, we have no doubt as to the correctness of the decision of the court, for the reasons therein stated.

As to the second point, the facts now stated are at variance with the position assumed by counsel on both sides in the oral argument before the court. It then appeared to the court, from the opinion of the Board of Tax Appeals and from the brief of the government's counsel, that no deduction from gross income had been allowed to the taxpayer for the expenses of conducting his architect's office, and counsel for both parties were re-

peatedly asked why such deductions had not been allowed; but they were at a loss to offer any explanation. The petition for rehearing now suggests that the amounts of the tax actually assessed against the taxpayer in each of the years in question is much smaller than would have been the case had the tax been assessed against gross rather than upon net income, and it is pointed out that in the deficiency letter of the Commissioner, the net income for the year ending February 28, 1925, was given as $32,677.11, thus indicating that some deduction had been made from the gross amount of $44,666.15. Hence it is argued that no occasion exists for a rehearing of the case by the Board of Tax Appeals. The deficiency letter does not show the net income for the year ending February 29, 1924. It may be inferred from the figures now submitted that the tax was calculated in each year on a sum less than the gross income of the taxpayer, but the record does not contain sufficient information to enable us to reach this conclusion with certainty. We therefore adhere to the opinion already handed down, based as it was in this respect upon concessions made by counsel at the argument. If it shall appear at a rehearing of the case by the Board that proper deductions for expenses have been allowed, the former decision of the Board may be reaffirmed; but if such deductions have not been allowed, the determination of the Board should be altered to include them.

Petition for rehearing denied.