## COMMISSIONER OF INTERNAL REVENUE v. MODJESKI.

### No. 10.

Circuit Court of Appeals, Second Circuit.

Feb. 4, 1935.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, M. H. Eustace, and John M. Hudson, Sp. Assts. to Atty. Gen., for petitioner.

John W. Townsend, of Washington, D. C., for respondent.

David Wilentz, Atty. Gen., amicus curiæ, for State of New Jersey.

John J. Bennett, Jr., Atty. Gen. (by Henry Epstein, Sol. Gen., of New York City), amici curiæ, for State of New York.

William A. Schnader, Atty. Gen., amicus curiæ, for Commonwealth of Pennsylvania.

T. Harry Rowland, of Camden, N. J., and Harold D. Saylor, of Philadelphia, Pa., amici curiæ, for Delaware River Joint Commission.

Julius Henry Cohen, of New York City, for Port of New York Authority.

Wilbur La Roe, Jr., of Washington, D. C., Austin J. Tobin, of New York City, and William A. Pallme, of New York City, on the brief for amici curiæ.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

This petition to review seeks a determination of whether respondent's salary of $5,000 annually received from the Delaware River Joint Commission for 1927 is exempt from federal income tax.

The commission was created by the Legislatures of Pennsylvania and New Jersey (Penn. P. L. 814, approved July 9, 1919, as amended [36 PS §§ 3421 and note 3422 et seq.]; chapter 69 of the Laws of New Jersey 1919, p. 120 [Comp. St. Supp. 1924, § *216—37 et seq.]); section 8 as amended by P. L. 1926, p. 89 (Comp. St. Supp. 1930, § *216—44) as a joint commission for building a bridge across the Delaware river between the cities of Philadelphia, Pa., and Camden, N. J. It was composed of commissioners from each state. The cost of the construction was shared by each state. The money raised by New Jersey was by special bond issue "for the purpose of paying the cost of extending the system of State highways by the construction of bridges and tunnels for vehicular or other traffic across the Delaware or Hudson Rivers or either of them." Pennsylvania's share of the cost was shared equally by Philadelphia and the commonwealth of Pennsylvania.

Respondent, a consulting engineer, ranks high in his profession, and is a member of at least four partnerships, maintaining offices in New York, Philadelphia, Chicago, and San Francisco. He served as chief engineer and chairman of the board of engineers of the Delaware River Joint Commission for the years prior to 1927. On October 9, 1926, he addressed a letter to the commission pointing out that the work of the bridge was nearly completed, and "it will not need any attention excepting at the rate of three or four days a month during November and December and probably less often after the end of the year." He tendered his resignation taking effect October 31, 1926. On October 15, 1926, his resignation was accepted, and the $30,000 a year salary which he was receiving was reduced to $5,000, "with the title, powers, and responsibilities of Chief Engineer." The bridge was opened to the public for use July 1, 1926. During 1927, the respondent devoted approximately two days a month to his duties in connection with the bridge, which consisted of being available to the commission for consultation purposes in connection with engineering work concerning the bridge. He made inspections once a month and rendered a monthly report with reference to the status of the various contracts. He or one of his partners attended the monthly meetings of the commission, advised as to the correction of minor difficulties, such as rusting and loosening of castings and clamps. An office was maintained for the respondent at the bridge, and such assistants as the respondent might need were furnished; otherwise he was free to and did accept concurrent employment from sources other than the commission. During 1927 his gross income from practicing his profession was $106,934, which did not include the $5,000 compensation received from the commission. Respondent contends that his salary was exempt from taxation because it was paid to him as an employee

of a governmental agency engaged in carrying out an essential governmental function. The petitioner contends that he is an independent contractor whose earnings are subject to taxation within the authorities. The statute and regulations provide (Revenue Act of 1926, c. 27, 44 Stat. 9; Regulations 69, Art. 88):

"Sec. 213. For the purposes of this chapter, except as otherwise provided in section 233 [section 985]—

"(a) The term 'gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, * * * or gains or profits and income derived from any source whatever. * * *" U. S. C. A. title 26, § 954 (a), 26 USCA § 954 (a).

The sole question for our determination is whether the compensation paid for the services of the respondent, in his position in 1927 in connection with the engineering work and completion of the bridge, is exempt from federal income tax. Whether the commission was a governmental agency engaged in the exercise of a usual governmental function or merely carrying on the ministerial or proprietary functions for inhabitants of the interested states, we need not decide. It is enough to say that the respondent was an independent contractor and that his salary was not exempt from taxation.

The Board of Tax Appeals thought the determining test to be that the right of control of the activities of the respondent was maintained by the commission because he was chairman of the board of engineers to supervise the work of the construction of the bridge. But this was during the period of his employment prior to 1927. A new relation became effective for the year 1927. To win exemption from taxation, the respondent must show that he, for the period of 1927, was an officer or employee of the commonwealth of Pennsylvania and/or the state of New Jersey, or a political subdivision thereof, or that the collection of the tax is forbidden as a substantial interference with the exercise of a usually sovereign function of state government.

Respondent relies upon the claim that he was an employee of the Delaware River Joint Commission, contending it to be a governmental agency engaged in carrying out a usual governmental function. He is not entitled to immunity from taxation on constitutional grounds unless he is an officer or employee of such governmental agency. Metcalf & Eddy v. Mitchell, 269 U. S. 514, 46 S. Ct. 172, 173, 70 L. Ed. 384; Helvering v. Powers (Dec. 3, 1934) 55 S. Ct. 171, 79 L. Ed. ——; Burnet v. McDonough, 46 F.(2d) 944 (C. C. A. 8); Roberts v. Com'r, 44 F.(2d) 168 (C. C. A. 5); Brown v. Com'r, 55 F.(2d) 1076 (C. C. A. 5); Underwood v. Com'r, 56 F.(2d) 67, (C. C. A. 4).

In Metcalf & Eddy v. Mitchell, supra, the plaintiffs were consulting engineers engaged to advise states and subdivisions of states as to water supply and sewerage disposal systems. Some of the fees were on an annual basis, others on a monthly basis, and they were held to be subject to tax. The court said:

"They took no oath of office; they were free to accept any other concurrent employment; none of their engagements was for work of a permanent or continuous character; some were of brief duration, and some from year to year, others for the duration of the particular work undertaken. Their duties were prescribed by their contracts and it does not appear to what extent, if at all, they were defined or prescribed by statute. * * * There were lacking * * * the essential elements of a public station, permanent in character, created by law, whose incidents and duties were prescribed by law."

They were not employees, but independent contractors, for to be employees their services must be subject to the direction or control of their employers.

"In each instance the performance of their contract involved the use of judgment and discretion on their part and they were required to use their best professional skill to bring about the desired result. This permitted to them liberty of action which excludes the idea that control or right of control by the employer which characterizes the relation of employer and employee and differentiates the employee or servant from the independent contractor.".

The performance of the duties of the respondent's engagement here involved the use of his judgment and discretion; in fact it was using such that constituted the services for which he received compensation. The result to be accomplished by his engagement was through his best professional efforts. In Burnet v. McDonough, 46 F.(2d) 944, 947, the Eighth Circuit Court

of Appeals considered the cases and held that a lawyer engaged to act as counsel for a "bridge district" on a yearly salary plus additional compensation, while he maintained his own office and practice, was not tax exempt for payment so received because he was an independent contractor and not an employee. It was pointed out that there was not present a control of such a nature as to characterize an employer and employee relationship. The services rendered were no different from those he would render to a private person.

"The authorities clearly establish the doctrine that an individual rendering services to a state or a political subdivision thereof does not belong to the class of state agencies exempt from federal taxes, unless he has acquired the status of an officer or an employee."

■ The test of the right or power to tell the one rendering services "how" to do so has been regarded as sound (Singer Mfg. Co. v. Rahn, 132 U. S. 518, 10 S. Ct. 175, 33 L. Ed. 440) in determining the relation of master and servant. Such a relation exists when the employer may direct "not only what shall be done, but how it shall be done," when the manner in which the business is to be done may be directed. See Lucas v. Howard, 280 U. S. 526, 50 S. Ct. 87, 74 L. Ed. 593; Chicago, Rock Island & Pac. Ry. Co. v. Bond, 240 U. S. 449, 36 S. Ct. 403, 60 L. Ed. 735; Register v. Com'r, 69 F.(2d) 607, 93 A. L. R. 186 (C. C. A. 5); Casement v. Brown, 148 U. S. 615, 13 S. Ct. 672, 37 L. Ed. 582; Burges v. Com'r, 69 F.(2d) 609 (C. C. A. 5); Brown v. Com'r (C. C. A.) 55 F.(2d) 1076; Roberts v. Com'r, 44 F.(2d) 168 (C. C. A. 5).

As in Underwood v. Com'r, 56 F.(2d) 67 (C. C. A. 4), it will be admitted, that the purpose of employing the respondent was to have him direct how to work out the problems confronting the commission. His work, as to plan and method, must have been beyond the control of the commission of laymen, and, in this sense, there was a contract to sell services rather than employment of the respondent to perform services. Metcalf & Eddy v. Mitchell, supra. In the cases where the taxpayer was free to and did accept concurrent employment, the courts have generally regarded the taxpayer as an independent contractor. A small part of the respondent's time was devoted to the service of this commission. It was a type of work, consultation, super-

vision, etc., which could not possibly have been subject to any control of the commission. They might have disregarded his advice or accepted some other advice or supervision, but they could not tell him how to advise or how to inspect or to supervise.

■ Only interference with essentially governmental functions can be unconstitutional. Flint v. Stone Tracy Co., 220 U. S. 107, 31 S. Ct. 342, 357, 55 L. Ed. 389, Ann. Cas. 1912B, 1312. There it was said: "The true distinction is between the attempted taxation of those operations of the states essential to the execution of its governmental functions, and which the state can only do itself, and those activities which are of a private character. The former, the United States may not interfere with by taxing the agencies of the state in carrying out its purposes; the latter, although regulated by the state, and exercising delegated authority, such as the right of eminent domain, are not removed from the field of legitimate Federal taxation."

In the last pronouncement of the Supreme Court in Helvering v. Powers, 293 U. S. 214, 55 S. Ct. 171, 173, 79 L. Ed. —, it found that the trustees of the Boston Elevated Railway Company were "public officers," but still their income received from such office was not exempt from taxation. One limitation of tax exemption was said to be "that the state cannot withdraw sources of revenue from the federal taxing power by engaging in businesses which constitute a departure from usual governmental functions and to which, by reason of their nature, the federal taxing power would normally extend."

There the court set up as the test not "essential governmental functions" but "usual governmental functions." The court found that the state was not engaged in a usual governmental function, but, as said in Metcalf & Eddy v. Mitchell, supra:

"Not every person who uses his property or derives a profit, in his dealings with the government, may clothe himself with immunity from taxation on the theory that either he or his property is an instrumentality of government within the meaning of the rule."

The basis of the rule of exemption is to leave each government free from undue interferences by the other. Taxation by either government unavoidably has some effect on the other. And so, in the cases where the courts have held the taxpayer to be an independent contractor while the

state was engaged in a usual governmental function, the taxpayer was held not to be tax exempt. We think that the respondent was not tax exempt.

Decision reversed.