## CAMPBELL v. COMMISSIONER OF INTERNAL REVENUE.

### No. 5866.

Circuit Court of Appeals, Seventh Circuit.

Dec. 21, 1936.

George F. Mulligan, of Chicago, Ill. (Marion L. Marshall and George F. Mulligan, Jr., both of Chicago, Ill., of counsel), for petitioner.

Robert H. Jackson, Asst. Atty. Gen., and J. Louis Monarch and Howard P. Locke, Sp. Assts. to the Atty. Gen., for respondent.

Before EVANS, Circuit Judge, and LINDLEY and BALTZELL, District Judges.

BALTZELL, District Judge.

This is a petition for review of a decision of the Board of Tax Appeals sustaining the determination of a deficiency, by respondent, in the income tax of petitioner for the years 1926, 1927, and 1928. The total amount of deficiency thus determined was $2,285.77, being $1,032.79 for 1926, $646.27 for 1927, and $606.71 for 1928.

Petitioner is a consulting actuary, resides in Evanston, Ill., and for the years in question the greater portion of his income was derived from the practice of his profession. Several years ago there was created by the Legislature of Illinois a commission which was charged with the duty of making a study of pensions and pension systems for public employees, and petitioner was the actuarial adviser for this commission. Through the efforts of this commission there was enacted by the Legislature of Illinois an act creating the "Municipal Employees Annuity and Benefit Fund." (Smith-Hurd Ill.Stats. c. 24, § 1044 et seq.). This act provides for benefits or annuities for employees, their widows and minor children in cities of a certain class. The act provides the method by which funds are to be raised for the payment of such benefits or annuities. Later, the Legislature enacted legislation providing for an annuity or benefit fund for the county employees of Cook county, Ill. (Smith-Hurd Ill.Stats. c. 34, § 188 et seq.). There was also enacted about this time similar legislation in Wisconsin providing for a benefit and annuity fund for the policemen and firemen of Milwaukee (Laws Wis. 1921, c. 589; Laws Wis.1923, c. 423). Provision was made in the acts in each state for the administration of these funds by a board of trustees called a "retirement board" which was to consist of five members. Pursuant to these acts, such boards were duly appointed. The revenue necessary for the successful operation of this system was provided by the imposition of a tax levied by the common councils of the cities and by contributions made regularly by the employees who were to be benefited by such system. The various amounts thus contributed were deducted from the salaries of the employees. It became the duty of the board administering such fund to see that these deductions were made, that the taxes levied by the cities were received, that all money received by it was properly invested, and that the interest received from such investments was properly accounted for. The boards were, under the act, given rather broad powers. They were authorized to accept gifts, bequests, etc., of money or property and to use it as specified in the act. They also had the power to receive, consider, and either approve or disapprove all applications for annuities or benefits. It became their duty to adopt such rules and regulations as were necessary in the proper administration of their affairs, and to employ all necessary medical, actuarial, clerical and other assistants, and to fix their fees or salaries.

There were four retirement boards, with which we are concerned, created under these acts. One board was to administer the Firemen's Annuity Fund in Milwaukee; one the Policemen's Annuity Fund in Milwaukee; one the Municipal Employees' Annuity Fund in Chicago, and one the County Employees' Annuity Fund in Cook County, Ill.

Petitioner took an active part in promoting and encouraging the passage of the acts providing for the creation of these funds and for the appointment of the boards for their administration. Consequently, he was employed as their actuary under letter contracts terminable by either party upon 30 days' notice. His duties, as well as

his compensation, were stated in each contract. It was his duty to attend all meetings, either in person or by an assistant in an advisory capacity; to compute the amounts to which annuitants will be entitled and to do such work of an actuarial nature as the board may require. For his services, he was to receive $75 per month from the Firemen's Annuity Fund in Milwaukee; $75 per month from the Policemen's Fund in Milwaukee; $250 per month and fixed sums for each "prior service certificate" issued from the Annuity Fund of Cook County, Ill., and $4.25 per hour when working strictly alone or with the board, from the Municipal Employees' Fund in Chicago. In addition, he also received a substantial allowance for the employment of clerks, stenographers, etc., and for office space in which to do the work of the boards. He supervised the work of all his assistants and assumed full responsibility for the result of their work. He employed all such assistants and had the authority to discharge them at his will. He had various other clients for whom he did actuarial work, and these same employees assisted him in such work. About 50 per cent. of his time was devoted to the work of the boards in 1926; 60 per cent. in 1927, and 70 per cent. in 1928. He devoted such time as was necessary to do the work required for each board, but he was not required, under the contract, to devote any certain lengths of time each day, week, etc., to either board. He neither took an oath of office nor gave a bond. During the three years in question he received from the board administering the Firemen's Fund in Milwaukee a total sum of $2,741.35; the Policemen's Fund in Milwaukee the sum of $2,804; the Employees' Fund of Cook County, Ill., the sum of $21,219.08; the Municipal Employees' Fund of Chicago, the sum of $33,461.17, or a total from the four boards of $60,225.60.

It is the contention of petitioner that the creation, maintenance, and operation of an annuity and benefit fund by a retirement board for the employees of certain subdivisions of a state is the exercise of an essential governmental function; that he was a part-time employee of the boards administering such fund, and that, therefore, the income received by him for the services rendered is exempt from taxation. It is the contention of respondent that the retirement boards were not engaged in the exercise of essential governmental functions, and further, if they were so engaged,

petitioner was not an employee, but was an independent contractor, and that, therefore, the income received by him, during the three years in question, is taxable.

The question of whether or not a person is an employee of government or is an independent contractor has been before this and other courts many times. In the instant case, the Board of Tax Appeals found that petitioner was an independent contractor, and that, therefore, the income received by him from the four retirement boards, during the three years in question, is taxable income. From that decision this appeal is being prosecuted.

Petitioner made a written proposal to each of the four boards, before his employment, outlining in detail his duties and the compensation desired. The proposal to each board was substantially the same in so far as his duties were concerned, but included a different rate of compensation. These proposals were presented to the respective boards, and appropriate action taken by resolution of the boards. In one of the proposals it is stated by petitioner that "I shall do the actuarial work required. * * * You are to furnish me with data regarding the service and date of birth of each contributor. * * * It will then be my duty to compute the credit in the case of each contributor and furnish you with the results of my computations on a certificate prepared under your direction, signed as the Board shall determine, and certified to as to accuracy of computations by me as actuary of the Board. Payment for such work shall be made upon receipt of bill for same, accompanied by certificates as they are being completed." This did not include all of the duties of petitioner as outlined in his proposal, but is a provision which strongly indicates that petitioner is an independent contractor and not an employee. A similar provision is found in the contract with each board.

In speaking upon the question of what constitutes an independent contractor as distinguished from an employee, the Supreme Court, in the case of Metcalf & Eddy v. Mitchell, 269 U.S. 514, 46 S.Ct. 172, 173, 70 L.Ed. 384 said: "In each instance the performance of their contract involved the use of judgment and discretion on their part and they were required to use their best professional skill to bring about the desired result. This permitted to them liberty of action which excludes the idea that control or right of control by the em-

ployer which characterizes the relation of employer and employee and differentiates the employee or servant from the independent contractor. Chicago, Rock Island & Pacific Ry. Co. v. Bond, 240 U.S. 449, 456, 36 S.Ct. 403, 60 L.Ed. 735; Standard Oil Co. v..Anderson, 212 U.S. 215, 227, 29 S. Ct. 252, 53 L.Ed. 480. And see Casement v. Brown, 148 U.S. 615, 13 S.Ct. 672, 37 L.Ed. 582; Singer Mfg. Co. v. Rahn, 132 U.S. 518, 523, 10 S.Ct. 175, 33 L.Ed. 440." So, in the instant case, petitioner had, by written contract, undertaken to do a certain line of work for the retirement boards for which he was to receive a stipulated compensation. In the performance of this work he was to use his independent judgment. He was skilled in his profession and naturally applied this skill to the performance of his duties, as outlined in his written proposals. He maintained his own office, employed his own assistants who did a part of the work under the contracts and for whose work he was responsible. These same assistants did work for him in connection with his clients other than the boards. Instead of attending the meetings of the boards himself, he had authority, under the contract, to permit one of his assistants to attend them. He or his assistant attended such meetings in an advisory capacity. He was not required to expend any certain time during any day, week or month,. in the performance of his duties. Such time only as was necessary to perform the duties outlined in his contract was required. He had liberty of action in each case submitted to him for consideration. The extent of the work necessary to be done in each case was determined by him, and any part or all of such work could be done by his assistants and he alone was responsible .for their acts. He could employ or discharge such assistants at his pleasure. The full extent of his duties, as well as his compensation, was contained in the written proposals of petitioner and the resolutions of the retirement board.

The Board of Tax Appeals heard the evidence and decided against the contention of petitioner. In speaking of the duty of an appellate court, in a case somewhat similar to the instant case, this court said: "The burden was upon it to establish the affirmative, for it was seeking a deduction from its gross income. In this court its burden was even greater. It must here show that there was no substantial evidence to support a finding that it was not an officer or employee of the municipality, whereas before the Board of Tax Appeals the burden was met if it established its assertion by a preponderance of the evidence." Consoer, Older & Quinlan, Inc., v. Commissioner, etc., (C.C.A. 7) 85 F.(2d) 461, 463. It was a question of fact as to whether or not petitioner was an employee or an independent contractor. There was substantial evidence to support the conclusion of the board. In fact, the evidence shows conclusively that no other conclusion could have been reached.

It will not be necessary for us to consider or decide whether or not such creation, maintenance, and operation of an annuity and benefit fund by a retirement board is the exercise of an essential governmental function, in view of our conclusion.

The decision of the Board of Tax Appeals is affirmed.