## COMMISSIONER OF INTERNAL REVENUE v. DE LEUW.

## SAME v. KELKER.

### Nos. 6150, 6151.

Circuit Court of Appeals, Seventh Circuit.

Dec. 22, 1937.

Rehearing Denied March 23, 1938.

Carlton Fox, of Washington, D. C., James W. Morris, Asst. Atty. Gen., Sewall Key, J. Louis Monarch, and Howard P. Locke, Sp. Assts. to Atty. Gen., for petitioner.

Albert L. Hopkins, Harry B. Sutter, and Peter L. Wentz, all of Chicago, Ill. (Hopkins, Sutter, Halls & De Wolfe, of Chicago, Ill., of counsel), for respondent.

Before EVANS and MAJOR, Circuit Judges, and BALTZELL, District Judge.

BALTZELL, District Judge.

This is a review of the decision of the United States Board of Tax Appeals which held that there was no deficiency in the income tax of respondent for the years 1929, 1930, and 1931, as had previously been determined by petitioner. There is also a companion case, Commissioner v. R. F. Kelker, Jr., cause No. 6151, in which the same issue is involved, and to which the same facts apply. We entered an order that the transcript of record in cause No. 6151 need not be printed; that the appeals be heard together; and that a like judgment be entered in each case.

On May 20, 1901, there was passed by the city council of Chicago an ordinance creating a special committee to be known as the "Committee on Local Transportation," hereinafter referred to as "the committee." It consists of nine members of the city council, to be appointed by the mayor. Thus, it will be seen that the personnel of the committee is subject to change in accordance with the views of the mayor. It is the duty of the committee, as outlined in the ordinance, to consider such ordinances, resolutions, orders, or matters as may be referred to it by the city council, to carry on work of investigation as may have been left uncompleted by the Street Railway Commission, to consider and devise plans for meeting situations that may arise when the street railway renewal ordinances come up for action, to make a special study of the kind, quality, and sufficiency of the local transportation service and facilities of Chicago, and to make recommendations to the city council from time to time, looking to the improvement of such local transportation, etc. The ordinance, also, gave to the committee authority to employ a secretary and such other clerical and expert assistants as it may deem necessary; provided, of course, that the total expenditure for such purposes shall not exceed the amount appropriated by the city council for that purpose.

On December 1, 1922, the chairman of the committee created an engineering staff to assist the committee in its studies, consisting of a chief engineer, a principal as-

sistant engineer, assistant engineers, etc. There was in existence at that time, and at all times with which we are here concerned, a civil service commission of Chicago (hereinafter referred to as "the commission"), of which the chairman of the committee asked approval of a temporary appointment to fill this engineering staff. Such approval was granted, and on December 7, 1922, the chairman reported to the commission that respondent had been by him appointed, as of December 1, assistant engineer to be paid the sum of $35 per day for his services, and that R. F. Kelker, Jr., had been by him appointed chief engineer, as of December 5, for which he was to receive the sum of $100 per day for his services. An appropriation was made by the city council each year in an amount sufficient to meet the expenses of the committee, including its payment to respondent and Kelker, Jr., for their services. Respondent was engaged by the committee from December 1, 1922, to January 10, 1933, with the exception of a leave of absence period from April 29, 1925, to April 1, 1926. For his services, he received the following compensation for the time actually engaged: From December 1, 1922, to April 20, 1925, the sum of $35 per day; from April 1, 1926, to September 15, 1926, the sum of $50 per day; from September 16, 1926, to May 1, 1932, the sum of $75 per day; and from that date to January 10, 1933, the sum of $1,250 per month. The total compensation received by respondent for his services was as follows: For the year 1929, $7,450, for the year 1930, $4,725, and for the year 1931, $17,550, or a total of $29,725 for the three years in question. His compensation was paid by the city of Chicago in the form of city employees' pay checks drawn upon the city treasurer, in accordance with the semimonthly pay rolls prepared under the direction of, and signed by, Kelker, Jr., as chief engineer, and approved by the chairman of the committee and by the city comptroller as to appropriation authority. These pay rolls contained the certificate of the civil service commission of Chicago, to the effect that each person whose name appeared thereon had entered the service of the city in accordance with civil service requirements.

The committee outlined the duties of R. F. Kelker, Jr., as chief engineer, as follows: To attend all meetings of the committee and subcommittees, to make such studies and investigations, with the aid and assistance of other persons in the service of the committee, as ordered by the committee, subcommittees, or chairman, to prepare and submit reports, to supervise the activities of the engineering staff, to prepare and certify to the semimonthly city pay rolls of persons in the service of the committee on its engineering staff, and to make employment reports to the civil service commission in connection with such staff. The duties of respondent were such as were assigned to him from time to time by the chief engineer. For such services he received the amount per diem as fixed by the committee for the time actually expended in the performance thereof, and his services were terminable by the committee at any time and without cause. His duties were not prescribed by statute or ordinance. He was neither required to take an oath nor provide a bond, and neither an oath was taken nor a bond provided.

Respondent performed a large part of his work for the committee in the field. The conference work and attendance upon the committee meetings, however, were held in the rooms of the committee in the city hall and the offices of the corporation counsel. A large portion of the drafting and clerical work was done in the private office of respondent, prior to August, 1930. Since that time, space for this work has been provided by the committee in buildings other than the city hall.

Respondent and Kelker, Jr., formed a partnership in the year 1923 under the firm name of Kelker-DeLeuw & Co. and engaged in the practice of their profession, that of consulting engineers, which continued until October 15, 1929, at which time the partnership was dissolved. During the existence of this partnership, it did engineering work for between ten and twenty-five cities and villages in Illinois, and did work as consulting engineers for the cities of Los Angeles, Cal., Baltimore, Md., St. Louis, Mo., New York City, and many other cities throughout the United States. This firm received compensation for its services rendered these various cities and villages during its existence, in addition to the compensation received by its individual members for the services rendered the committee. Each individual member included in the total income of the partnership the amount received by him for the services rendered the committee, but each claimed deduction in his individual income tax return for the amount so received by him.

In other words, and to be specific, the income received by respondent from the partnership during the year 1929, as shown by his income tax return, was $23,013.16 (being .one-half the total income of the partnership), from which he took a deduction of $7,450, the amount received that year for his services to the committee. There were, also, other deductions claimed, with which we are not here concerned. Kelker, Jr., the other member of the partnership, filed a similar report for that year, in which he charged himself with $23,013.16, from which he took a deduction of $13,700, the amount which he received for his services to the committee during that year.

Respondent organized a corporation by the name of.Charles DeLeuw & Co., which engaged in the business of consulting engineers and began its operation on January 1, 1930. From the date of the dissolution of the partnership on October 15, 1929, to January 1, 1930, respondent operated the business as an individual, he having purchased all the assets of the partnership as of the date of its dissolution. In his income tax returns, respondent claimed deductions for the compensation received by him for his services to the committee for the years 1930 and 1931.

Petitioner denied the deductions claimed by respondent for the years 1929, 1930, and 1931 for the compensation which he received from the committee for each of those years, and determined a deficiency for each year respectively, from which determination respondent appealed to the Board of Tax Appeals, which sustained his position. This petition for review challenges the correctness of the decision of the Board.

It is the contention of respondent that the compensation which he received for his services to the committee is exempt from income taxation, because such compensation was received by him for services rendered as an employee of an instrumentality of Illinois that is engaged in an essential governmental function. ·It was the contention of petitioner before the Board that the committee was not an instrumentality of Illinois engaged in an essential governmental function, but he has since abandoned that position, and that question is,·therefore, not presented for determination. It is his contention, however, that respondent was not an employee of the committee, but that he was an independent contractor, and that the compensation received by him from the city of Chicago for services rendered the committee is subject to income taxation. The Board held that he was an employee, and that the income received for services rendered the committee was, therefore, exempt from taxation.

There is only one question presented for determination, and that is, whether or not respondent was an employee of the committee or an independent contractor. If he was an employee, the compensation in question is exempt from income taxation, but if he was an independent contractor, no such exemption exists. Metcalf & Eddy v. Mitchell, 269 U.S. 514, 46 S.Ct. 172, 173, 70 L.Ed. 384.

In determining the question presented, it must be kept in mind that respondent was a consulting engineer, employed by the committee as such; that he was at liberty at all times to accept other employment as a consulting engineer; that he did accept such other employment during the years with which we are here concerned; that he received compensation for such other employment; that such other employment was by cities and villages throughout the United States; that at all times he maintained his own office in which much of the work of the committee was performed; that he was not under the supervision of the committee as to the manner in which his work was to be performed, but that he used his best professional skill in the performance of his duties to accomplish the desired result; and that his services were terminable by the committee at any time and without cause.

This court has heretofore had before it the question of whether or not a taxpayer is an employee or an independent contractor. See Consoer, Older & Quinlan, Inc. v. Commissioner, etc., 7 Cir., 85 F.2d 461; Campbell v. Commissioner, etc., 7 Cir., 87 F.2d 128; Haight v. Commissioner, etc., 7 Cir., 52 F.2d 779; Elam v. Commissioner, etc., 7 Cir., 45 F.2d 337; Schnackenberg v. Commissioner, etc., 7 Cir., 90 F.2d 175. In each of these cases, with the exception of Schnackenberg v. Commissioner, etc., we held that the taxpayer was an independent contractor. No good purpose can be served by reviewing each of these cases. It is sufficient to say that the case of Schnackenberg v. Commissioner, etc., supra, in which we held that the taxpayer was an officer, may be distinguished from the other four

cases in that the taxpayer held the office of General Attorney of the Chicago South Park Commissioners and headed the legal department of the commission; he received an annual salary, his tenure was for a definite period, and until his successor was chosen, his duties were of a permanent character, and his office was created and he was appointed by ordinance of a corporate municipal governing body, created by act of Legislature.

■ In the instant case it is not contended that respondent held a municipal office, but only that he was an employee of the committee. He had no definite tenure, and his duties were not of a permanent nature. He was paid only for the time expended in the performance of his duties, and was subject to discharge at any time. These were terms upon which he was engaged by the committee. Furthermore, he was free in the exercise of his own judgment as to the manner in which he would perform the task assigned him by the chief engineer. There was no supervision by the committee of the manner in which he performed his work, neither did the chief engineer actively supervise it. He was at liberty to accept other employment as a consulting engineer and, in fact, did accept such employment and received, as compensation for services rendered therefor, sums which aggregate each year much more than the compensation received from the committee during the same period. It is apparent that he was an independent contractor and not an employee.

Respondent's situation was similar to that of the consulting engineers in the case of Metcalf & Eddy v. Mitchell, supra, in which the court said, "They took no oath of office; they were free to accept any other concurrent employment; none of their engagements was for work of a permanent or continuous character; some were of brief duration. * * * In each instance the performance of their contract involved the use of judgment and discretion on their part and they were required to use their best professional skill to bring about the desired result. This permitted to them liberty of action which excludes the idea that control or right of control by the employer which characterizes the relation of employer and employee and differentiates the employee or servant from the independent contractor."

In the case of Commissioner v. Modjeski, 2 Cir., 75 F.2d 468, 471, the court,

in reversing the Board of Tax Appeals which held that respondent, a consulting engineer, was an employee, said, "As in Underwood v. Com'r, 56 F.2d 67 (C.C.A. 4), it will be admitted, that the purpose of employing the respondent was to have him direct how to work out the problems confronting the commission. His work, as to plan and method, must have been beyond the control of the commission of laymen, and, in this sense, there was a contract to sell services rather than employment of the respondent to perform services."

In the instant case there was no written contract, but there was an understanding that respondent was to perform the duties assigned to him by the chief engineer. This, in effect, was "a contract to sell his services" and clearly brings him within the independent contractor class.

The fact that his engagement by the committee met with the approval of the civil service commission of Chicago does not change or alter the situation. The record discloses that the commission did not participate in his appointment, other than to give its approval. The fact that his appointment was approved by the commission was simply an incident material to his appointment, and did not affect his status as either an employee or an independent contractor. That status is determined by the other factors heretofore discussed.

■■ It is contended by respondent that there is substantial evidence to support the conclusion of the Board and that, therefore, this court has no power to disturb its decision, the rule being, as contended by him, that where there is substantial evidence to support the conclusion of the Board, this court will not disturb its decision. There can be no doubt as to the correctness of the rule for which he contends. Consoer, Older & Quinlan, Inc. v. Commissioner, etc., supra. The decision of the Board is based upon a legal conclusion—that respondent was an employee—drawn from the indisputed facts. Our problem is to determine whether or not the legal conclusion drawn by the Board is supported by the facts. We do not believe that it is. On the other hand, the facts, as found, require the conclusion that respondent was an independent contractor, and that the compensation which he received for his services to the committee during the years in question is, therefore, taxable as a part of his income for that period.

The decision of the Board of Tax Appeals is reversed and the cause remanded with directions to enter one consistent with the views here expressed.